YARRUT, Judge.
These two suits were consolidated for trial in the district court and for argument here; both resulting from the default in the execution of an agreement of sale and purchase of an immovable between Vendors (Williams and Hood) and Purchaser (Luke Motor Co., Inc.), confected by Realtor (Treadaway).
Realtor filed suit No. 1363 against Vendors and Purchaser for $630.00 (commission on sale), with legal interest from judicial demand, plus an attorney’s fee of $200.00.
Defendant (Purchaser) filed its answer with a reconventional demand against the Realtor for the return of its deposit of $1,050.00, together with interest from judicial demand.
In suit No. 1364, Purchaser sued James L. Williams, III, and Mrs. Evelyn Williams Hood seeking a judgment against said Defendants, jointly, in the sum of $2,439.17, or two-thirds of the aggregate of double the deposit, costs, and attorney’s fees. Joseph L. Williams, one of the Vendors, a non-resident of the State, was not made a party. The Defendants reconvened for $2,000.00, the difference between the sales price Herein ($10,500.00) and the sales price received by them ($8,500.00) in their subsequent sale of the property to a third party.
The district court rendered judgment in favor of Treadaway in the sum of $630.00, together with interest thereon from date of judicial demand, plus attorney’s fees of $200.00, payable out of the ten percent deposit made with him, and the remainder to be returned to Purchaser. The claim of the Realtor against Vendors was dismissed. Realtor’s counsel admitted in oral argument that he is not entitled to recover an attorney’s fee.
In case No. 1364 the district court dismissed both claims, that of the Purchaser and the Vendors’ reconventional demand. From this judgment Purchaser and Realtor took devolutive appeals.
The record discloses that Vendors’ written offer to sell their property through Realtor for $10,500.00 cash was accepted by Purchaser on October 9, 1961, Purchaser deposited the ten percent required.
In the agreement it is stipulated that: should Vendors not comply within the time specified, the Purchaser has the right to demand the return of double the deposit,, or specific performance; and should Purchaser fail to comply within the period specified, Vendors have the right, either to declare the deposit ipso facto forfeited, without formality and without placing the Purchaser in default, or to demand specific performance; that the Realtor’s commission is six percent of the purchase price; that either party who fails to comply with the terms of the contract is obliged to pay the commission, and all fees and costs incurred in enforcing collection and damages; that the act be passed before Purchaser’s notary on or prior to December 20, 1961; provided that, if bona fide title curative work is required, the date for passing the sale is extended thirty days.
On November 24, 1961, Purchaser’s notary obtained a mortgage certificate reporting 48 judgments and liens against the-property, totalling $24,593.42. Promptly by letter dated December 6, 1961, to Vendors’' attorney, the notary enclosed the mortgage-certificate and directed that Vendors’ attorney have the inscriptions cancelled quoad the property sold; that Purchaser was. ready and anxious to take title immediately upon his clearing of the mortgage certificate.
*913 On December 20, 1961, the expiration of the time for transfer of title, these inscriptions had not been cancelled, nor were they cancelled at the end (January 19, 1962) of the additional thirty days granted for necessary title curative work. No other extension of time was granted for passing the sale.
On February S, 1962, the inscriptions on the mortgage certificate (except one for $5.26) were cancelled quoad the subject property. On August 13, 1962, Vendors sold the property at a loss of $2,000.00.
Subsequent to the letter of December 6, 1961, to Vendors’ attorney, Purchaser’s notary on several occasions sought to have him cancel the inscriptions, but to no avail; and further contacted the Recorder of Mortgages on numerous occasions to ascertain if the inscriptions had been removed, being advised each time in the negative.
We must conclude that the district court was in error in finding Purchaser at fault in not taking title; and that the Vendors should have been put in formal default. As recited hereinabove, the agreement of sale fixed a primary terminal date for passage of the act of sale as December 20, 1961, to be extended for thirty days (to January 19, 1962), should bona fide curative work be required with respect to the title.
In the notary’s letter of December 6, 1961, Vendors’ attorney was advised that all inscriptions must be cancelled by Vendors unless they desired him (notary) to do so, for which services a fee would be charged. No such notification was received by the notary, and, in fact, Vendors’ attorney undertook the responsibility.
Purchaser’s notary further advised Vendors’ attorney in his letter of December 6, 1961, that Purchaser was “ready and ^nxious to take title to the property” and that the act of sale would be passed as soon as the mortgage certificate was cleared; and again on many occasions through January 19, 1962, spoke to Vendors’ attorney endeavoring to have him clear the certificate.
Consequently, as of January 19, 1962 (the last day on which the act of sale should have been passed), the inscriptions ($24,-593.42) had not been cancelled, and were only cancelled February 5, 1962, fifteen days after the primary period and the extra, thirty days for curative title correction, had both elapsed.
A vendor must deliver title free of encumbrances and suggestion of future litigation, and which is good and merchantable. City of New Orleans v. Ricca, 217 La. 413, 46 So.2d 505; Carter v. Morris Building & Land Imp. Ass’n., 108 La. 143, 32 So. 473; Rodriguez v. Shroder, La.App., 77 So.2d 216; Couret v. Hopkins-Rhodes & Co., 13 Orleans App. 161; Kinler v. Griffen, 5 Cir., 251 F.2d 655.
In Fox v. Doll, 221 La. 427, 59 So.2d 443, while recognizing that the existence of mortgages or liens not suggestive of' litigation does not absolve a purchaser from the obligation of completing his contract to buy real estate so encumbered, the court observed that the purchaser does have right to demand cancellation of his contract or require that security be given in lieu of such cancellation. In the instant case* all encumbrances, with the exception of one lien for $5.26, were suggestive of litigation since Vendors, through their attorney, at-all times insisted that such encumbrances, did not relate to the Vendors, and apparently concluded it was not necessary to have them cleared from the mortgage certificate..
In his reasons for judgment, the district court concluded that the notary’s letter of December 6, 1961, serves to show that the attorney for the Purchaser knew that the removal of the inscriptions from the mortgage certificate was a routine matter. It was Vendors’ attorney who was to clear the mortgage certificate, not Purchaser’s. If the cancellation was routine, then it emphasizes the default of Vendors. Purchaser could not be expected to attend an act of *914 sale, even after the expiration of the prescribed time, when the notary could not retain sufficient funds from the purchase price ($10,500.00) to cancel inscriptions to-talling $24,000.00. In such case, Vendors were not able to tender a title free of encumbrances and free of suggestion of future litigation.
 Under our jurisprudence, a purchaser cannot refuse title because of encumbrances which can be satisfied from the purchase price. However, this is not possible when the uncancelled encumbrances are far in excess of the purchase price, as was in this case at the time the sale should have been executed.
Regarding necessity of putting Vendors in default by Purchaser, in Elliott v. Dupuy, 242 La. 173, 135 So.2d 54, the Supreme Court commented that a contract may be violated, either actively by doing something inconsistent with the obligation it has proposed, or passively by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract.
This case does not fall within the purview of Di Cristina v. Weiser, 215 La. 1115, 42 So.2d 868, apparently relied upon by the district court. There the court expressly found the Purchaser to be in default, and since he was in default, pursuant to Article 1913 of the LSA-Civil Code, he could not thereafter place the Vendor in default. The Purchaser here was not in default, nor did it breach its agreement with the Vendors. This fact differentiates the Di Cristina case from the one at bar.
Vendors argue that the Purchaser did not accept title because it no longer had use for the property. Purchaser’s motive in asserting its legal right to terminate the contract is not controlling here; the question simply addresses itself to Purchaser’s legal right to do so. Certainly, if the Purchaser had wished to waive the Vendors’ default and take title, that was its prerogative.
The judgment of the district court rendered and signed on July 12, 1963, in these consolidated cases, is now reversed, and judgment rendered in favor of Luke Motor Company, Inc., and against Philip C. Tread-away for the return of the deposit of $1,-050.00, with legal interest from judicial demand, and for all taxable costs in both courts expended by Luke Motor Company, Inc.; and judgment rendered in favor of Philip C. Treadaway and against Joseph L. Williams and Evelyn Williams Hood, jointly, in the full sum of $420.00, being two-thirds of his commission of $630.00 (the third vendor not having been cited herein), with legal interest from judicial demand, and all taxable costs in both courts; and further judgment in favor of Luke Motor Company, Inc., and against James L. Williams, III, and Mrs. Evelyn Williams Hood, jointly, in the full sum of $700.00, with interest from judicial demand until paid, plus costs in both courts.
Judgment reversed and rendered.