172 So.2d 723 (1965)
Gordon NORGREN
v.
Walter R. HARWELL.
No. 1608.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1965.
*724 William McM. King, New Orleans, for plaintiff-appellant.
Philip E. Henderson, Houma, for defendant-appellee.
Before McBRIDE, YARRUT and HALL, JJ.
HALL, Judge.
Plaintiff, a real estate agent, brought this suit against Walter R. Harwell, Jr., and Springwood Park Inc. in solido to collect a $6,000.00 commission allegedly due him in connection with a real estate sales contract executed by the defendants as purchasers. The sale was never consummated because the purchasers refused to take title.
Defendants filed separate answers, although represented by the same attorney.
In his answer to the suit defendant Harwell denied that he individually was a party to the contract, but admitted that he executed it as president of Springwood Park Inc. and that he did in that capacity refuse to accept title to the property.
The answer of Springwood Park Inc. admits its execution of the contract as purchaser and admits that it did not appear and take title to the property although formally called upon to do so. It alleged that it was justified in refusing to accept title because the vendors could not deliver a clear and merchantable title for the reason that the property was burdened with a servitude which greatly decreased the value of the property. Springwood Park *725 Inc. also filed a reconventional demand for damages against plaintiff in the sum of $1,886.00.
The trial below resulted in a judgment rejecting plaintiff's demands and dismissing his suit as to both defendants and a further judgment in favor of Springwood Park Inc. against plaintiff for $1,886.00 as prayed for in its reconventional demand. Plaintiff appealed.
The following facts are revealed by the record: In the latter part of 1959, Springwood Park Inc., of which Walter R. Harwell, Jr. was president, undertook the development of a residential subdivision on the Mississippi Gulf Coast. This venture was proving successful and sometime in October 1960 Harwell came to St. Tammany Parish, Louisiana seeking a site for a second subdivision. He contacted plaintiff, a real estate agent of St. Tammany Parish and after being shown three different tracts for possible subdivision, signed on behalf of his corporation an offer to purchase for $60,000.00 the 138 acre tract involved in this suit.
The offer is dated November 9, 1960 and was signed "Springwood Park Inc. per Walter R. Harwell Jr. Pres", but someone has drawn a line through the words "Springwood Park Inc." When it was done, or who did it, or for what purpose is undisclosed by the record. Suffice it to say we are convinced that the offer was made by the corporation alone and that Harwell, personally, is not a party thereto.
The offer which was accepted in due course by the owners of the property provided for an immediate cash deposit of $3,000.00 and for an agent's commission of 10% of the purchase price. However in lieu of the cash deposit plaintiff accepted three post-dated checks drawn on the account of Springwood Park Inc. each for the sum of $1,000.00. The checks are dated December 26, 1960, January 9, 1961 and January 31, 1961 respectively and have never been paid, one of them being returned "N.S.F." and payment having been stopped on the other two.
The purchase agreement describes the property covered thereby merely as "138 acres (as per plat attached)." The plat attached to the agreement does not show or make any reference to a 50 foot servitude in favor of Central Louisiana Electric Company Inc. which actually existed along the entire highway frontage of the property involved. By this servitude or easement the electric company was granted the right to construct, operate and maintain an electric transmission line along a strip 50 feet wide on the south side of Highway 190 and contains the following restrictions: "maximum of four streets can be built across right of way. Plants and shrubs are permitted provided they do not interfere with line; no sub-station or other permanent structures will be built on right of way except poles and guys." (emphasis supplied).
The existence of this servitude was later discovered by Springwood Park Inc. and is the reason why the three deposit checks were not honored and why it refused to accept title to the property.
Some few days before the signing of the agreement to purchase plaintiff and Harwell were both on the property in question and both noticed the power lines and the fact that a 50 foot strip had been cleared along the highway but both plaintiff and Harwell testified that they did not know that the property was encumbered by the servitude, that is to say, neither of them concluded from the existence of the power lines that there was a servitude which would prevent free access to the property.
Mr. E. R. Lucas, Jr., an engineer employed by Springwood Park Inc. to survey and prepare a subdivision plat of the property went upon the property the day following the execution of the purchase agreement. When he noticed the power lines he asked plaintiff in Harwell's presence whether there was a servitude which prevented free access to the property and was assured by plaintiff that there was none.
*726 Relying upon plaintiff's assurance that the property was not encumbered Lucas proceeded with his survey plat of subdivision. On December 12, 1960 Mr. Lucas was having some difficulty with the location of the rear line and went to the courthouse to be sure of the location. While he was at the courthouse he ran across the servitude in favor of Central Louisiana Electric Company. Mr. Lucas immediately telephoned Mr. Harwell long distance and Harwell instructed him to stop all operations at once. Harwell thereupon telephoned plaintiff not to deposit the three $1,000.00 checks until the matter was worked out and plaintiff agreed not to. He also told plaintiff that unless the servitude were removed Springwood would not take title to the property or would at least demand a reduction in price. Plaintiff tried without success to get the electric company to relinquish the limited, access provisions of the servitude, and since no agreement was reached as to a reduction of the price, Springwood Park Inc. refused to accept title.
Plaintiff however attempted to cash the three checks. One of them was presented to the bank before Harwell stopped payment and was returned N.S.F. Harwell succeeded in stopping payment on the other two.
Plaintiff admitted that Harwell told him before the agreement was signed that Springwood was buying the property for subdivision and that the corporation's plans were to devote the frontage on Highway 190 to commercial establishments with a paved parking area abutting the highway.
The subdivision plat prepared by Mr. Lucas shows that there were 40 of such commercial lots which would be affected by the servitude. According to the plan there could be no access to any of these lots without crossing the servitude area. These proposed commercial lots were manifestly the most valuable part of the property.
We are of the opinion that Springwood Park Inc. was justified in refusing to take title to the property. See Germain v. Weller, La.App., 67 So.2d 332; Stauss v. Kober, La.App., 51 So.2d 121. The vendors were never in a position to deliver what the purchaser bargained for, that is to say 138 acres as per a plat which did not reveal the servitude. The mere fact that Harwell had noticed the transmission line poles was no notice that crossing the right of way was restricted in any manner. Since Springwood Park Inc. was justified in refusing to take title, plaintiff cannot recover a commission from it.
Springwood Park Inc. reconvened for an item of $1,386.00 expended by it for the engineering services of Mr. Lucas and for a further item of $500.00 representing a deposit made with plaintiff by Springwood Park Inc. in connection with a real estate transaction entirely unrelated to plaintiff's main demand.
When Mr. Lucas was informed by plaintiff that there was no servitude affecting the property he went ahead with his survey. When he found out on December 12, 1960 that the property was burdened with a restrictive servitude he stopped work immediately. His services to December 12, 1960 amounted to $1,386.00 which was paid by Springwood Park Inc. Plaintiff became the agent of both parties to the purchase agreement as of the time of its execution, and in view of his knowledge of the intended use of the property his affirmative statement that no servitude existed was a breach of the duty owed by him to Springwood Park Inc. For this reason we are of the opinion that the loss caused by his misrepresentation should be borne by him rather than with Springwood Park Inc.
The $500.00 item of the reconventional demand represents a deposit which Springwood Park Inc. placed with plaintiff in connection with its offer to purchase another piece of property and is entirely unrelated to the transaction involved here. All that the testimony reveals is that plaintiff received the deposit and that the sale *727 was not consummated. What property was involved, who the vendor was and why the sale was not consummated are matters upon which the record is silent. Obviously this item should be disallowed.
For the foregoing reasons the judgment appealed from is amended by reducing the principal amount awarded to Springwood Park Inc. on its reconventional demand from $1,886.00 to $1,386.00 and as so amended and in all other respects the judgment is affirmed; costs of appeal to be borne by plaintiff-appellant.
Amended and affirmed.