345 So.2d 558 (1977)
SOLAR GENERAL CONTRACTOR, LTD.
v.
URBAN REDEVELOPMENTS, INC.
No. 7756.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1977.
Rehearing Denied May 17, 1977.
*559 Tucker, Schonekas & Garrison, Russell J. Schonekas, Louis G. Dutel, Jr., William J. Dutel, New Orleans, for plaintiff-appellee.
Albert J. Huddleston, Kenner, for defendant-appellant.
Before SAMUEL, BOUTALL and MORIAL, JJ.
BOUTALL, Judge.
On January 5, 1973 Solar General Contractor, Ltd. (Solar), entered into an agreement to purchase thirty lots of ground in Chateau Estates, Jefferson Parish, from Urban Redevelopments, Inc. (Urban), for the total price of $772,430.00. At the execution of the agreement, Solar gave Urban a cash deposit of $36,121.50 and a promissory note for $36,121.50 due and payable before January 1, 1975. The agreement provided that upon completion of certain offsite improvements, the date for the act of sale would be set at which time Urban was to deliver to Solar "a clear and merchantable title", and the failure to do so would render the agreement null and void. Improvements were completed later than anticipated, and Urban demanded that Solar take title. Solar refused to take title and filed suit for the return of its deposit and its promissory note, contending that Urban breached the contract because title to the property is not merchantable.
This refusal came about when Solar's notary obtained certificates from the Clerk of Court and Ex-Officio Recorder of the Parish of Jefferson on the lots to be acquired. The mortgage certificate showed an inscription of a "Notice of lis pendens" in a suit entitled "Robco, Inc. v. Urban Redevelopments, Inc., et als." # 152-169 on the Docket of the 24th Judicial District Court. That suit is a possessory action by Robco seeking a permanent injunction against Urban and others, the owners and developers of the subdivision of which these lots form part, to prevent them from trespassing on certain immovable property, the ownership of which is claimed by Robco. Robco's property consisted of canals which completely circumscribe the perimeters of the parent subdivision and over one of which Urban constructed a concrete roadway, Chateau Blvd., now a dedicated public roadway.
The suit is not concerned directly with the title of the lots sought to be sold herein, but because of the circumscription of the subdivision by the canals, there will be no access to the subject lots except through sufferance of Robco. Thus, a successful resolution of the suit is a necessity in order to use the subject lots. Demand to take title was made on January 21, 1974, and refusal to take title was made January 31, 1974. The rights of the parties are thus governed by the situation which crystallized at that time period, although subsequent developments have changed the overall situation. At the pertinent time, the only access to the subject property was over Chateau Blvd. Previously there was access generally into the area by another street, Sunset Blvd., however the dedication of that street had been revoked, and there was no rededication of that street until March, 1974. Chateau Blvd. was in fact being used for ingress and egress, but at that time the ability of the property owners to use it was *560 placed in jeopardy by the pending suit mentioned above, which at time of trial had still not been resolved, although the lis pendens had been cancelled some time after the present suit was filed.
The basic issue involved here is thus whether a clear and merchantable title existed in January 1974. In the case of Roberts v. Medlock, 148 So. 474 (La.App. 2d Cir. 1933) we find the following definition of merchantable title at page 476:
"[4] A `merchantable title' is one which can be readily sold or mortgaged in the ordinary course of business, to a reasonable person familiar with the facts and apprised of the question of law involved. It need not be free from every technical defect, of all suspicion, or the possibility of litigation. It must be a record title free of rational substantial doubt to the extent that a purchaser should feel that he can hold his purchase in peace without the probability of attack and with reasonable assurance that it will be readily salable on the open market. (Citations omitted.)
"The word `merchantable' implies something less than a perfect title and permits of defects which are not reasonably liable to result in assault. This presents a question of fact as well as one of law." This is consistent with the definition expressed in 92 C.J.S. Vendor & Purchaser §§ 190-191.
In considering whether restricted access to property can be the basis for refusal to take title to property, we refer to the case of Norgren v. Harwell, 172 So.2d 723 (La. App. 4th Cir. 1965) which held that a purchaser was justified in refusing to take title when access to a tract of land purchased for development as a subdivision was restricted to a maximum of four streets across a right of way located between the proposed subdivision and the highway. If the facts in that case and our case were alike, we would have no hesitancy in declaring that Norgren controls the situation here. However our facts differ in that the access limiting property is not located directly in front as in Norgren but some distance away. On the other hand, if the Robco suit is successful, there would be no access at all to the subject property, whereas in Norgren there was only limitation of access involved.
Our courts have held that a vendor must deliver title free of encumbrances and suggestion of future litigation. Treadaway v. Williams, 163 So.2d 911 (La.App. 4th Cir. 1964); Young v. Stevens, 252 La. 69, 209 So.2d 25 (1968). There are numerous cases with decisions on both sides of the question as to whether a title is merchantable and suggestive of litigation. It is apparent that each case must be decided upon the facts peculiar to it within the definition expressed above of merchantability. We refer to 23 Louisiana Law Review 609 at page 610 which expresses our view on the situation herein:
"One who purchases immovable property seeking to obtain perfect ownership has, as his principal cause, the acquisition of that bundle of legal relations between himself and all others which makes up perfect ownership. If he does not obtain all or any one of these legal relations, such as the right to unrestricted use, he is not getting all that he sought. The immediate end which he had in view, his principal cause, is thus tainted with error such as to vitiate his consent to the purchase contract. Conversely, if the purchaser is aware that some of the legal relations will be denied him, and nevertheless binds himself to accept the property there is no error and his consent is not vitiated. Although never expressly mentioned, the Louisiana courts apparently recognize these principles by holding that a purchaser is not compelled to accept a title which is suggestive of serious future litigation."
The agreement between the parties shows on its face that the purchaser was bargaining for lots which would be ready for immediate occupancy and use within a specified time frame, to the extent that paved streets and all of the public utilities would be in place so construction and development could start immediately. A reasonable and knowledgeable purchaser would *561 certainly be deeply concerned over the legal situation which confronted him at that time which would prevent not only his ability to himself go upon the property to construct and develop, but further prevent him from selling to another in good faith property which he knew may not be readily accessible until after a successful resolution of the pending lawsuit. There is thus posed a very real threat to accessibility of the property while the litigation is pending, and a prospective purchaser is justified in refusing to take title under these circumstances.
For the reasons above expressed, we affirm the judgment of the trial court.
AFFIRMED.
MORIAL, J., filed a dissenting opinion.
MORIAL, Judge, dissenting.
In my opinion the sole issue before this court is whether or not a notice of lis pendens affecting property giving access to the lots to be acquired renders the title to those lots unmerchantable.
On the basis of this court's decision in Miller v. Justice, 299 So.2d 558, writs refused La., 302 So.2d 311 (1974) and Urban Redevelopments, Inc. v. Justice, La.App., 299 So.2d 561, writs refused La., 302 So.2d 311 (1974); the judgment of the district court must be reversed. In those cases, plaintiffs sought a writ of mandamus against the clerk of court, to compel him to remove a notice of lis pendens from mortgage certificates on property which was not directly involved in the litigation for which the notice of lis pendens was filed. There the property in dispute was that which provided access to the plaintiff's property. The owners of the property subject to the notice of lis pendens intervened in the suit claiming that the inscription on plaintiff's mortgage certificate was valid. We held that where the notice of lis pendens did not describe the property described in the mortgage certificate, and where the intervenor did not attempt to assert any title to, privilege or lien on plaintiff's property, the lis pendens was improperly placed on the mortgage certificate. Here, as in the above cited cases, the notice of lis pendens does not describe the property described in the mortgage certificate.
Furthermore, as to merchantability of title, Young v. Stevens, 252 La. 69, 209 So.2d 25 (1967) and Treadaway v. Williams, 163 So.2d 911 (La.App. 4 Cir. 1964) relied on by the district court are inapplicable. In those cases the encumbrances were on the title of the property being purchased and not the adjoining property. I consider the question of merchantability of title only insofar as it affects the title tendered in the present action. To be "merchantable" a title "* * * need not be free from every technical defect, of all suspicion, or the possibility of litigation. It must be a record title free of rational substantial doubt to the extent that a purchaser should feel that he can hold his purchase in peace without the probability of attack and with reasonable assurance that it will be readily salable on the open market." Roberts v. Medlock, 148 So. 474 (La.App.2d Cir. 1933).
For the foregoing reasons, I respectfully dissent.