PRICE, Judge.
This is an appeal from the judgment ordering the return of the purchase price of timber because of a breach in the warranty of title by the vendor.
Defendant, J. F. Sellers, purporting to be the sole owner, executed a deed to plaintiffs, Bill G. Halley and C. P. Malone, d/b/a Spearsville Timber Company, conveying all merchantable timber on an eighty-acre *78 tract in Ouachita Parish. Plaintiffs were given one year for removal. The specific date of execution of the deed is unclear as the instrument was dated “August_, 1974.”
Plaintiffs seek return of the purchase price contending they discovered subsequent to the sale that defendant was not the record owner of the timber, and that their right to peacefully remove the timber was disturbed by third parties. Defendant denies a breach of warranty occurred as he contends he had the right to sell the timber, and that plaintiffs made no attempt to cut and remove the timber within the time allowed by the contract.
The undisputed facts giving rise to this litigation are as follows:
Defendant and S. T. Ashcraft purchased the eighty-acre tract on June 22, 1973. In September, 1973, they sold twenty acres to Marvin Underwood and forty acres to Jesse R. Myers. Subsequently, defendant made an oral agreement with Underwood and Myers to clear their land in return for the timber situated on it. A letter confirming the agreement was later signed by the wives of Underwood and Myers. The letter was never recorded. In May, 1975, Underwood sold his twenty-acre tract to Jimmy Lenard, and in July, 1975, Myers sold twenty acres of his property to Phillip Sims and wife.
The remaining facts are in dispute. Plaintiffs contend they did not attempt to remove timber until March or April of 1975 because of excessive rainfall. After entering upon the land, they contend a telephone call was received by Halley’s wife from a third party informing her that her husband’s firm had no right to cut the timber. Plaintiffs contend they examined the public records and found defendant owned only an undivided one-half interest in twenty of the eighty acres. Plaintiffs contend they immediately made an inquiry to defendant regarding the problem and he gave assurances he had the right to sell all of the timber on the entire tract. Relying on this assurance by defendant, plaintiffs contend they made another attempt to remove the timber in the summer of 1975 (July or early August). Plaintiffs contend their work crew was then ordered to stop cutting by Phillip Sims, who was a vendee of a portion of the eighty-acre tract. Plaintiffs ceased operations and filed this action demanding a return of the purchase price.
Defendant denies the attempts were made by plaintiffs to remove the timber at the times contended by them. He contends no effort was made until some time in September, 1975, after the stipulated period for removal of the timber had expired. Defendant also denies receiving a call from plaintiffs in April, 1975, questioning his ownership or right to sell the timber.
The trial court resolved the conflicting evidence relating to these disputed factual issues in favor of plaintiffs and found that plaintiffs had made the two attempts to remove timber from the tract within the one-year period provided by the contract. The court found that the last attempt was within sufficient time to have allowed removal of substantially all of the timber had plaintiffs’ crew not been stopped by Mr. Sims.
The court further found that it was uncertain that defendant could have established legal ownership of the timber on all of the eighty-acre tract at the time he sold the timber to plaintiffs in August of 1974, and that defendant breached his warranty of title for the following reasons:
Thus, it is far from certain that defendant could have established legal ownership of the timber on all of the property when plaintiffs took their timber deed in August, 1974. While Underwood and Myers may well have acknowledged the ownership of Sellers and Ashcraft at that time, they could have raised serious questions as to the duration of their own agreement and may well have questioned the right to defendant to grant a year’s delay for cutting. Moreover, whatever position defendant’s vendees might have taken in a dispute with defendant at that time, plaintiffs had no knowledge of those oral and unrecorded agreements, were not parties to them and should not *79 have been obliged either to litigate or to obtain acknowledgements to sustain their title to the timber. At the very least, defendant could have attempted to resolve the problems in April or May when Malone discussed it with him by obtaining written ratifications from the persons who then owned the property.
The Court therefore concludes that defendant did not deliver to plaintiffs merchantable title to the timber on 60 acres of the land. No matter when, if at all, plaintiffs attempted to remove the timber prior to August 31,' 1975, they faced substantial risk of being cast for trespass damages regarding the 60 acres previously sold by defendant. The latter’s contentions herein are ex-post facto conclusions based upon the fact that the one-year period expired without removal of any timber and the testimony of his vendees at least partially recognizing his verbal claim to the timber in this trial.
With respect to the 20 acres of which defendant and Ashcraft retained record title, a somewhat similar situation is presented. Defendant did not disclose Ashcraft’s co-ownership at the time of the timber deed. When questioned later, he orally asserted the legal mandate to bind Ashcraft; and the latter ratified that fact during this trial. Again, however, throughout the one-year term of the timber deed, the record ownership was contrary to the timber deed, and defendant neither obtained nor furnished independent proof of his mandate. Again, had plaintiffs removed timber from this 20-acre tract during the prescribed period, they would have incurred substantial risk of contrary contentions by Ashcraft.
Defendants’ own actions and omissions, therefore, placed plaintiffs in the completely untenable position of having to assume the risk of legal trespass, or of taking affirmative action at their expense of seeking the necessary provable acknowledgements and ratifications. The warrant implied by law in defendant’s timber sale does not require the vendee to assume such a position.
The factual issues in dispute turn primarily on the credibility of the witnesses’ testimony. Therefore, the trial court’s finding on such issues should not be disturbed in the absence of manifest error which has not been shown by the record.
Defendant’s remaining specifications of error relate to whether plaintiffs have shown an eviction in fact, and if so, whether he was timely called in warranty in accord with La.C.C. Art. 2517 to preserve the right of warranty against the seller.
As found by the trial judge, under the circumstances confronting plaintiffs, they were not required to expose themselves to the possible commission of a trespass to test the validity of defendant’s title to the timber. The facts presented constitute an eviction in accord with La.C.C. Art. 2500.
The oral notification to defendant in April or May, 1975, put defendant on notice his title was in question. He had ample opportunity thereafter to have obtained the necessary written evidence from his co-owner or vendees to furnish proof to plaintiffs of his authority to sell. Defendant having failed to take this action within the time provided for removal of the timber, cannot now complain plaintiffs have not complied with the provisions of Arts. 2517 and 2518.
For the foregoing reasons, the judgment is affirmed at appellant’s costs.