382 So.2d 258 (1980)
Arthur C. WATSON et al., Plaintiffs-Appellees,
v.
BIG T TIMBER COMPANY INC. et al., Defendants-Appellants.
No. 7517.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1980.
Donald R. Miller, Shreveport, Herman Lawson, Mansfield, for defendants-appellants.
Smitherman, Smitherman, Lunn, Hussey & Chastain by John B. Hussey, Jr., Shreveport, Watson, Murchison, Crews, Arthur & Corkern by Daniel T. Murchison, Natchitoches, for plaintiffs-appellees.
Before CUTRER, STOKER and LABORDE, JJ.
CUTRER, Judge.
This is a third party demand by Vancouver Plywood Company, Inc. (Vancouver) for recovery of the purchase price of standing timber. Third party defendants are Big T *259 Timber Company, Inc. (Big T Timber), Florida Investments, Inc. (Florida Investments), and Roy E. Thigpen, III. From the trial court's judgment in favor of Vancouver, and against all third party defendants, in solido, the third party defendants appeal.
Arthur C. Watson and Jack O. Brittain filed suit against Big T Timber and Vancouver alleging that those defendants had disturbed plaintiffs' possession by recording a quitclaim deed conveying title to Big T Timber and by recording a sale conveying title to Vancouver. A third party demand was filed by Vancouver against Big T Timber, Florida Investments and Thigpen seeking a return of the purchase price for standing timber. The main demand and the third party demand were tried separately.
Trial of the main demand was held in December 1978. The trial court rendered judgment in favor of Watson and Brittain, recognizing their possession of the tract. Additionally, following the requirements of LSA-C.C.P. art. 3662, Vancouver and Big T Timber were ordered to assert any adverse claims of ownership within 10 days from the date the judgment became executory or be precluded from asserting ownership. There is no contention that such claims have been asserted. This judgment was affirmed on appeal in Docket Number 7163, October 10, 1979.
Trial of the third party demand was held in June 1979. The trial court rendered judgment in favor of Vancouver and against Big T Timber, Florida Investments and Thigpen, in solido.
The record reveals the following undisputed facts: In January 1978, Thigpen, upon examining the Natchitoches Parish tax assessor's records, determined that a 92.8 acre tract of land in Natchitoches Parish was assessed to an absentee landowner, Mrs. Melba O'Quinn, of New Roads, Louisiana. Thigpen contacted Mrs. O'Quinn by mail and inquired whether she would sell the property to him. Through her attorney, F. Audley Smith, Mrs. O'Quinn responded by letter that she and her co-owner, Harley B. Howcott, were willing to sell the property for $9,000.00 by quitclaim deed without warranty, even as to the return of the purchase price.
In the letter to Thigpen, Smith stated that, in his opinion, title to the property was clouded. He stated that approximately ten years previously, there had been some litigation over the property. Smith pointed out that, for those reasons, Mrs. O'Quinn and Mr. Howcott were willing to sell for substantially less than the market value.
Thigpen accepted the offer from Smith and in March 1978, quitclaim deeds were executed by Mrs. O'Quinn and Howcott, individually, and for another co-owner, Mary Howcott Barnes, to Thigpen, for a total price of $9,000.00. One other quitclaim deed was executed by Stacy Williams to Thigpen for $10.00 "and other considerations." This deed was executed because of an omission in a deed some years earlier involving the property, which eventually resulted in Williams having an apparent interest in the tract.
Prior to the purchase of the property from Mrs. O'Quinn, Howcott and Williams, Thigpen had a Bossier City attorney by the name of Blondeau examine the title. No title opinion was given, according to Thigpen, because of a title problem emanating from approximately the year 1880.
Later, Thigpen employed J. Q. Davis, an attorney from Coushatta, Louisiana, to examine the title. It was agreed between them that Davis would examine the title back to only 1920, which was the year Thigpen's ancestors in title obtained the property by sheriff's sale. Thigpen furnished a "brief summary of the history of the property" to Davis.
Davis' opinion reflected that, as of April 4, 1978, the ownership of the property was in the names of Stacy Williams, Marilyn K. Williams, Melba O'Quinn, Harley B. Howcott and Mary P. B. Howcott Barnes. (Thigpen had not yet recorded his deeds to the property.)
On March 5, 1978, Thigpen contacted Vancouver regarding the property. On March 24th, Thigpen showed William Behan, Procurement Forester for Vancouver, *260 and another Vancouver employee, the tract of land. An offer for the standing timber was made by Vancouver to Thigpen by telephone on March 27, 1978. Two or three days later, Vancouver contacted Don Burkett, an attorney from Many, Louisiana, to examine the title to the property. Burkett was also contacted by Thigpen who had obtained his name from Vancouver. Thigpen and Burkett met at the Natchitoches Parish Courthouse and Thigpen gave Burkett a list of documents affecting the property, covering a period of time extending from the sheriff's sale of 1920 up to 1972. This was the same list that Thigpen had furnished to attorney Davis.
At this meeting, a discussion occurred regarding the nature of the deed by which Thigpen would transfer the property as to whether it was to be a warranty or non-warranty deed. Burkett informed Thigpen that Vancouver would require a warranty deed. Thigpen was unwilling to transfer the timber by a warranty deed because he wanted to avoid personal liability. Thigpen then decided to sell the property from himself to Florida Investments, a corporation solely owned by him, from Florida Investments to Big T Timber, also solely owned by him, and from Big T Timber to Vancouver by a warranty deed. Vancouver was informed that Thigpen would sell by a warranty deed through Big T Timber.
On April 3, 1978, Vancouver made a written offer of $87,730.64 for all timber 12 inches and larger at 12 inches above the ground. This offer was accepted by Thigpen on behalf of Big T Timber.
On April 7, 1978, Burkett completed his title examination and informed Vancouver by telephone that it could proceed with the purchase since in his opinion the title was merchantable. The opinion was also put into writing in a letter dated April 7, 1978. The letter stated that the examination did not include matters that might be revealed outside of the public records.
On April 7, 1978, the deeds to Thigpen from Mrs. O'Quinn, Williams and Howcott, and from Thigpen to Florida Investments to Big T Timber were recorded. Vancouver issued a check for $87,730.64 to Big T Timber and received a warranty deed for the timber in return. The deed was subsequently recorded on April 10, 1978.
Thigpen, upon receiving the check at Vancouver's office in Florien, Louisiana, went to Vancouver's bank, Guaranty Bank & Trust Company of Alexandria, and received a money order for the amount of the check payable to Big T Timber. On April 10th, Thigpen deposited the funds in Big T Timber's account at the Bank of Commerce in Shreveport. On April 11th, Thigpen transferred the funds to the account of Florida Investments.[1] On April 13, 1978, Thigpen received a check for $87,730.64 from Florida Investments. On April 13, 1978, the sum of $77,730.64 was deposited in a savings account of Thigpen as agent for Florida Investments. On April 14th, this sum was withdrawn by Thigpen, thus the entire purchase price of the timber went to Thigpen.
The corporate minutes of both corporations, admitted into evidence, reflect that the sale price by Thigpen to Florida Investments was represented by a promissory note of $87,730.00 payable to Thigpen. The sale price for the sale from Florida Investments to Big T Timber was $90,000.00, represented by two promissory notes, one in the amount of $87,730.00 and the other for $2,270.00.[2] The deeds from Thigpen to Florida Investments and from Florida Investments to Big T Timber were quitclaim deeds with no warranty even as to a return of the purchase price.
*261 On April 12, 1978, a letter was written by Arthur C. Watson informing Vancouver of the claim of possession by Watson and Jack O. Brittain. On May 25, 1978, Watson and Brittain filed a possessory action resulting in the third party demand by Vancouver, now before us.
In its third party demand, Vancouver demands that Big T Timber, Florida Investments and Thigpen be held liable, in solido, for return of the purchase price of the timber. The third party demand alleges that Thigpen had personal knowledge of prior litigation concerning the property and that he had knowledge of adverse claims of possession, but did not inform Vancouver of these claims. The demand alleges that Vancouver would not have purchased had it known of the adverse claims and the prior litigation; that Thigpen was attempting to insulate himself from responsibility by conveying the property through Florida Investments and Big T Timber; that these corporations were the alter ego of Thigpen; that in the event Watson and Brittain were recognized as possessors of the property, Vancouver was entitled to recover the purchase price of the timber from Thigpen, Big T Timber and Florida Investments, in solido.
The trial judge made the following findings:
". . . the actions of Mr. Thigpen reveal a planned, intentional and deliberate scheme to defraud, deceive, misrepresent and mislead Vancouver Plywood Co., Inc. into purchasing the timber. The Court further finds Mr. Thigpen knew of serious and numerous deficiencies in the title to the 92.86 acres and actively manipulated legal counsel into giving him favorable title opinions, which in fact were not based on full information but were based on limited information released by Thigpen to the attorneys for the specific intention of cheating and promoting a spurious scheme to bilk Vancouver."
The trial judge rendered judgment for $87,730.64 in favor of Vancouver and against Big T Timber, Florida Investments and Thigpen, in solido.
The issues on appeal are: (1) Whether Vancouver is entitled to recover the purchase price, and if so, (2) whether the corporations are the "alter ego" of Thigpen.
Is Vancouver Entitled to Recover the Purchase Price
The appellants (Big T Timber, Florida Investments and Thigpen) argue that Vancouver relied on its own investigation of the public records rather than any misrepresentation by Thigpen, and thus, would not be entitled to recover the purchase price from any of the third party defendants.
We will affirm the judgment of the trial court, but find it unnecessary to pass upon the issue of reliance by Vancouver. Instead, we find that Vancouver is entitled to a return of the purchase price for a breach of warranty.

"Sale of rights to standing timber is considered under the jurisprudence of this state as the sale of an immovable and is thus governed by the Civil Code Articles on immovables." Marshall v. Armand, 306 So.2d 331, at 335 (La.App. 3rd Cir. 1975).
The deed from Big T Timber to Vancouver was a deed with full warranty. This warranty includes warranty against eviction.
LSA-C.C. art. 2476 provides that:

"The warranty respecting the seller has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices." (Emphasis added.)

LSA-C.C. art. 2500 provides that:
"Eviction is the loss suffered by the buyer of the totality of the thing sold, or of a part thereof, occasioned by the right or claims of a third person."
LSA-C.C. art. 2501 provides that:

"Although at the time of the sale no stipulations have been made respecting the warranty, the seller is obliged, of course, to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, and against the charges claimed on such thing, which *262 were not declared at the time of the sale."

On the main demand by Watson and Brittain, the court rendered judgment recognizing their right of possession. The effect of this judgment is to evict Vancouver from the timber, in violation of the warranty of Big T Timber. LSA-C.C. articles 2500, 2501, 2502. Thus, Vancouver has a right to rescind the sale and recover the purchase price for breach of warranty against eviction. See: Halley v. Sellers, 347 So.2d 77 (La.App. 2nd Cir. 1977).
Are the Corporations the "Alter Ego" of Thigpen
The issue remaining to be resolved is whether Big T Timber and Florida Investments are the "alter ego" of Thigpen, thus rendering Thigpen and Florida Investments liable, in solido, with Big T Timber for the breach of warranty.
Vancouver argues that since Thigpen knowingly concealed some facts and revealed only part of which he knew, he was guilty of material misrepresentations. Therefore, the corporate veils of both corporations should be pierced, establishing personal liability on the part of Thigpen.
Circumstances under which the corporate veil will be pierced have been set out in the case of Kingsman Enterprises v. Bakerfield Elec. Co., 339 So.2d 1280 (La.App. 1st Cir. 1976), as follows:

"The general rule that corporations are distinct legal entities, separate and distinct from the individuals who compose them, is statutory in origin and well recognized in the Louisiana jurisprudence. La.C.C. art. 435; Buckeye Cotton Oil Company v. Amrhein. 168 La. 139, 121 So. 602 (1929); Texas Industries. Inc. v. Dupuy & Dupuy Developers. Inc., supra [227 So.2d 265 (La.App. 2d Cir. 1969)]; Johnson v. Kinchen. 160 So.2d 296 (La.App. 1st Cir. 1964). Thus, shareholders are not individually responsible for the debts due by the corporation. La.C.C. art. 437; La. R.S. 12:93(B); Texas Industries. Inc. v. Dupuy & Dupuy Developers. Inc., supra.

There are, however, limited exceptions to the rule of non-liability of shareholders for the debts of a corporation whereby the court may ignore the corporate fiction and hold the individual member or members liable. In such situations courts commonly refer to the corporation as the `alter ego' of the shareholder. One such exception to the non-liability rule involves situations where fraud or deceit has been practiced on a third party by the shareholder acting through the corporation. La.R.S. 12:95; Bossier Millwork & Supply Company v. D. & R. Construction Company, Inc., supra [245 So.2d 414 (La.App. 2d Cir. 1971)].

* * * * * *

". . . Regardless of the basis for piercing the corporate veil, it is clear that the situation must be viewed with regard to the totality of circumstances in each case. However, it should be kept in mind that in Louisiana the concept of the separation of the corporate entity from its shareholders is the general rule and is firmly established. Because of the beneficial role of the corporate concept, this principle should be disregarded in only exceptional circumstances. Johnson v. Kinchen, supra."

Further, as stated in Giuffria Realty Company v. Kathman-Landry, Inc., 173 So.2d 329 (La.App. 4th Cir. 1965):

"The general rule is that the corporate entity will be disregarded when it is necessary to promote justice or avoid inequitable results. . .." (See citations therein.)
With these principles in mind, we turn to further evidence in the record. Thigpen was aware of claims against the tract of land when he began his negotiations for the sale of the timber to Vancouver. He did not reveal this information to anyone though he did give some information concerning the history of the property to others. To withhold material information, such as was done here, amounts to an attempt to defraud. F. Audley Smith, Mrs. O'Quinn's attorney, testified that Thigpen had knowledge that there were claims against the property because he specifically *263 told Thigpen about the previous lawsuit.[3] At least three times, Smith informed Thigpen that Watson was claiming the property. Thigpen denied being aware of two claims of title and any claims of adverse possession, but the trial judge did not accept this testimony.
Thigpen did not mention any of the adverse claims to his attorneys, Blondeau and Davis, who examined the title for him.
Thigpen discussed the possibility of a non-warranty deed with the representatives of Vancouver. Vancouver refused to accept a quitclaim deed. Thigpen requested that he be given a letter which would relieve him of personal liability in the event of suit. Vancouver likewise refused this proposition. Thigpen then determined that he would sell the property by a quitclaim deed without warranty even as to return of the purchase price to a corporation which he established after Vancouver refused to accept a non-warranty deed. Thigpen sold the property first with no warranty to Florida Investments. On the same date, April 7, 1978, a sale with no warranty was made from Florida Investments to Big T Timber.
Thigpen stated that the reason he transferred the property through the corporations was to give each corporation an opportunity to do some business; also, he stated that he sold the timber through Big T Timber to avoid personal liability. Big T Timber was not even in existence until Thigpen determined that Vancouver would accept only a warranty deed. The only income that Big T Timber had prior to the trial was the price of the timber sold to Vancouver. According to Thigpen, the only assets owned by Big T Timber were a small checking account balance and a small tract of timberland in DeSoto Parish. The corporate minutes of Florida Investments reflect that Florida Investments owned a small tract of land in DeSoto Parish, which it authorized to be sold in March 1979. It also held some mineral leases in DeSoto Parish and had a small checking account.
According to the testimony of Don Burkett, Vancouver's title attorney, Thigpen represented that he was going to make a large profit because the persons who sold to him were absentee owners who were not aware of the value of the property. Burkett stated that Thigpen told him that he was going to use the corporation for tax purposes.
The record reflects that Thigpen concealed facts known to him, which if known to Vancouver would have prevented the sale, with the intent to take unjust advantage of Vancouver by insulating himself from personal liability for return of the purchase price. The assets of the two corporations used were clearly not substantial. Thigpen, the sole stockholder of the two corporations, used both corporate structures to avoid personal liability, having concealed information (that he should have revealed) to the detriment of Vancouver.
Since Thigpen intentionally concealed information that would reveal that Vancouver would not enjoy peaceable possession, to Vancouver's detriment, while revealing other title information, and he unjustly used the corporate entities to absolve himself from personal liability on the warranty, this court will disregard the corporate fictions. We hold that Thigpen is personally liable, in solido, with Big T Timber and Florida Investments, for breach of warranty.
For the reasons assigned, the judgment of the trial court is affirmed. The costs of this appeal are assessed to defendants-appellants.
AFFIRMED.
NOTES
[1] The accounts for both corporations were opened at the Bank of Commerce in Shreveport on April 7, 1978.
[2] In the minutes of Florida Investments, there appears a copy of a promissory note from Big T for the sum of $2,270.00 dated April 11, 1978. In the minutes of Big T appears a copy of a note for $90,000.00 payable to Florida Investments by Big T Timber dated April 7, 1978 and marked paid. The supposed note for $87,730.00 from Big T to Florida Investments does not appear in the record.
[3] The previous lawsuit was filed in 1964. The last action was taken in 1968. The suit was filed by Mrs. O'Quinn and other co-owners against Watson and Brittain for possession of the tract. The suit was abandoned as no further action was taken for five years after the various motions and filings in 1968. LSA-C.C.P. art. 561.