419 So.2d 1315 (1982)
Roy HOCK
v.
SEA CAMPER OF NEW ORLEANS, INC. Ocean Oil International Engineering Corp. and Hector Pazos.
No. 12970.
Court of Appeal of Louisiana, Fourth Circuit.
September 3, 1982.
Rehearing Denied October 22, 1982.
*1316 Morris Bart, III, New Orleans, for plaintiff-appellee.
Gordon K. Konrad, Metairie, for defendants-appellants.
Before WARD, BYRNES and WILLIAMS, JJ.
WILLIAMS, Judge.
This is an appeal from a judgment of the trial court holding Sea-Camper of New Orleans, Inc., Ocean Oil International Engineering Corporation, and Hector Pazos liable in redhibition for damages suffered by the plaintiff, Dr. Roy Hock, who had purchased a defective pleasure vessel from the defendants.
The following facts were adduced at trial:
Hector Pazos was the sole shareholder of Sea Camper of New Orleans, Inc. ["Sea-Camper"] and also of Ocean Oil International Engineering Corporation ["Ocean Oil"]. Pazos formed Sea-Camper to sell pleasure crafts manufactured by Sea-Camper Industries, Inc.[1] In March of 1979, the plaintiff visited Sea-Camper to purchase a pleasure craft. Pazos and an employee of Ocean Oil, John Crabtree, showed the plaintiff *1317 a boat that he eventually purchased. Before he purchased the boat, the plaintiff went on a test ride with Crabtree, and although problems with the boat developed during this demonstration, Crabtree assured the plaintiff that they would be taken care of. Pazos told the plaintiff that the boat was a 1978 model, warranted by the manufacturer. Neither Pazos nor Crabtree mentioned that the boat had been involved in an automobile accident while it was being towed. The boat had been run approximately fifty-five hours and was sold to the plaintiff as a demonstrator.
On March 23, 1979, the plaintiff purchased the boat. A number of problems developed with the boat, two of which were of specific concern for the plaintiff. Approximately seven days after he purchased the boat, the plaintiff and several others, including his wife and daughters, went for a ride on the boat for the first time. When docking the boat, the plaintiff could not change gears and was able to stop the boat only when two passengers grabbed onto a pier. His daughter almost was thrown overboard as he tried to dock the boat because the cover on the back stairs near where she was standing flew open. The plaintiff immediately called Crabtree who inspected the boat and said that something had come loose in the gearbox and that he would fix it.
The second incident occurred the next time that the plaintiff used the boat. The plaintiff, his wife, and ten-year old son spent the night aboard the boat. The plaintiff awoke about 2:15 a. m. and discovered two or three inches of water in the boat. He awoke his wife and son, and they got off the boat as quickly as they could. This was the last time that the plaintiff used the boat. He has moored the boat in a rented slip since that time.
The afternoon after the flooding incident, the plaintiff learned, from the owner of another Sea Camper boat, of the accident involving his vessel. Negotiations between Sea-Camper and the plaintiff about the return or repair of the boat were fruitless. The plaintiff tendered the boat to Sea Camper and the manufacturer authorized the return of the boat, but Sea-Camper refused to return it because the plaintiff would not pay for the cost of its transportation back to Florida. Finally, the plaintiff filed suit in redhibition against Pazos, Sea-Camper, and the manufacturer. He later amended his petition to include John Crabtree and Ocean Oil as additional defendants. Trial was held and the district court ruled in favor of the plaintiff, holding Sea-Camper, Ocean Oil, and Hector Pazos liable for the return of the purchase price, attorneys' fees, and rental of the slip.
Sea-Camper and Pazos have appealed, alleging two errors in the court below: (1) the court erred in finding that a redhibitory defect existed in the boat at the time that it was sold, and (2) the court erred in holding Pazos and Ocean Oil liable.
REDHIBITION
The defendants contend that: (1) no redhibitory defects existed at the time of sale, and (2) the plaintiff failed to tender the boat for repairs of all of the problems upon which he based this action.
To rescind a sale for a redhibitory vice, a purchaser must prove: (1) that the seller sold him the thing; (2) that the thing contained a latent defect that rendered it useless; (3) that the purchaser would not have bought it had he been aware of the defect; and (4) that the defect existed at the time of sale. E.g., Custom Metal & Air Conditioning Co. v. Boudreaux, 346 So.2d 1379 (La.App. 3d Cir. 1977). An additional requirement has been added to this list: the purchaser must tender the thing for repair before the sale may be rescinded. La.Civ. Code art. 2531; Riche v. Krestview Mobile Homes, Inc., 375 So.2d 133 (La.App. 3d Cir. 1979); Wiltz v. Dixie Auto Sales, Inc., 315 So.2d 811 (La.App. 3d Cir. 1975).
The defendants contend that the plaintiff failed to show that any redhibitory defects existed at the time of sale. A number of the defects about which Dowling, the plaintiff's expert, testified were caused by passage of time. These include deteriorating draperies, carpets, etc. As the defendants *1318 point out in brief, Dowling did not inspect the boat until after a year had elapsed from the act of sale. Nevertheless, there is sufficient evidence in the record to uphold the trial court's determination that a number of these defects existed at sale. Some of the problems that the plaintiff experienced with the boat were first observed on the demonstration ride. For example, the foul odor attributed to leakage, was first noticed at that time. According to Dowling, the flooding of the cabin floor experienced by the plaintiff was due to a leak. Because the plaintiff had taken the vessel out only one other time before the flooding incident and the odor had been noticed during the demonstration run, it was not error to conclude that this defect also existed at the time of sale. The defective latch on the stairwell cover did not manifest itself until the plaintiff's first outing on the boat only about one week after the sale, and it is also logical to assume that it existed at the time of sale.
Although there is no evidence to attribute directly these defects to the automobile accident in which the vessel was involved, there is sufficient evidence to base a holding that problems sufficient to rescind the sale existed at the time the plaintiff bought the vessel.
The plaintiff admitted during testimony that once he decided to file suit, he went through the boat and listed all of its problems, some of which he had not communicated to the defendants. As stated above, tender for repair is a prerequisite to the recission of a sale. Although the defendants did not have the opportunity to repair all of the boat's defects, they nevertheless attempted to solve a number of them. In fact, the evidence at trial was uncontradictaed that Crabtree worked constantly with the plaintiff, trying to fix the boat. Crabtree testified that he fixed, among other things, the latch on the cover to the back stairwell, the gearbox, and inspected the boat when water was discovered on the floor.
At trial, Lionel Dowling was qualified as an expert for the plaintiff in the area of marine mechanics. Dowling testified that a number of problems still existed on the vessel, among them items that Crabtree had attempted to repair or had been informed of, including the latch on the stairwell cover and the condition of the propeller. He testified that the water that collected on the floor of the boat would be the result of a leak, and not failure on the part of the plaintiff to operate the equipment properly.
Although the plaintiff did not tender the boat for repair of all defects, the defendant nevertheless had an opportunity to repair some of the major ones. Furthermore, Crabtree spent a great deal of time handling the problems that the plaintiff was having with the boat. According to Dowling, the repairs made by Crabtree were mostly unsuccessful.
Based upon the evidence adduced at trial, the district court could conclude that the defendant had ample opportunity to repair the defects in the boat. Even assuming that the defendants had not been informed of all of the defects about which the defendant complained at trial, they did attempt to repair a sufficient number of major problems of which they were aware, to satisfy the requirement that the purchaser tender the object for repair.
The court was not in error in finding that a sufficient number of redhibit defects existed at sale and were tendered for repair for the sale to be recinded
LIABILITY OF PAZOS AND OCEAN OIL
The trial court held Pazos personally liable for the damages suffered by the plaintiff. Ocean Oil also was held liable for this amount.
The trial court found that the corporate identities of Ocean Oil and Sea-Camper were merged. This holding was based on the fact that the boat was purchased from the manufacturer by Ocean Oil and not Sea-Camper. Pazos explained at trial that bank accounts had not been set up in Sea Camper's name and Ocean Oil, therefore, purchased the boats and then conveyed them to Sea Camper. The plaintiff also emphasized that Crabtree, although an employee *1319 of Ocean Oil, did work for Sea Camper.
This is the only evidence contained in the record that relates to a mingling of corporate identity. No evidence of failure to keep separate identities, such as lack of corporate formalities, undercapitalization, failure to keep separate accounting records, etc. exists. Cf. Kingman Enterprises, Inc. v. Bakerfield Electric Co., 339 So.2d 1280 (La.App. 1st Cir. 1976).
Absent any other evidence, the trial court was in error in holding Ocean Oil liable for the judgment rendered against Sea-Camper.
Pazos was held personally liable. The general rule is that corporations are entities distinct from their shareholders, and the shareholders, therefore, are not personally responsible for the debts of the corporation. La.Civ.Code arts. 435 & 437; La. R.S. 12:93(B); Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., 227 So.2d 265 (La.App. 2d Cir. 1969).
There are exceptions to this rule. For example, if the shareholder fails to conduct the business on a corporate footing to such an extent that the identity of the corporation cannot be distinguished from that of the shareholder's, the corporation may be determined to be the alter ego of the shareholder. If this happens, the shareholder will be personally liable. Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943). See generally, Comment, 38 Tul.L.Rev. 738 (1964).
In the case now before us, no evidence other than Pazos's status as a sole shareholder of Sea-Camper was presented at trial. This clearly is insufficient to prove that SeaCamper was nothing more than the alter ego of Pazos. E.g., Gordon v. Baton Rouge Stores Co., 168 La. 248, 121 So. 759 (1929).
The plaintiff argued that Pazos committed fraud in representing to him that the boat was a "demonstrator" when industry standards would have considered it to be "used," and by failing to inform him that the boat had been involved in an accident.
La.R.S. 12:95 states:
"Nothing in this Chapter shall be construed as in derogation of any rights which any person may by law have against a promoter, subscriber, shareholder, director or officer, or the corporation, because of any fraud practiced upon him by any of such persons or the corporation, or in derogation of any right which the corporation may have because of any fraud practiced upon it by any of these persons."
Dowling testified at trial that a boat that had been ridden approximately fifty-five hours would not be considered a demonstrator in the industry. He also testified that the seller should have informed the buyer of the accident in which the boat was involved. He further stated that, in his opinion, the manufacturer's warranty ceased to be effective because of the accident.
Pazos and Crabtree testified that they did not mention the accident to the plaintiff because, in their opinions, it was not important. They explained that the damage had been repaired, and the repairs had been warranted. They also stated that while logging hours when demonstrating the boat no problems had developed.
In Watson v. Big T Timber Co., 382 So.2d 258 (La.App. 3d Cir. 1980), a shareholder who sold timber by means of a warranty deed, but intentionally concealed that the purchaser would not enjoy peaceable possession, was held personally liable for breach of warranty against eviction. See La.Civ.Code art. 2501. Watson is distinguishable from the present case on two grounds. First, the shareholder's intent to deceive the plaintiff to his detriment clearly was evident. In this case, the intent to deceive is not apparent from the record. Second, and more important, the decision to "pierce the corporate veil" in Watson was not based on fraud (La.R.S. 12:95), but rather was based on equitable considerations in view of the circumstances presented by the case as a whole.
The failure of the defendants to inform the plaintiff of the accident apparently caused the trial court the greatest concern.
*1320 At trial, Pazos and Crabtree stated that because, in their opinions, the boat had been restored to a "like new" condition, they did not think that it was necessary to mention the accident. Although evidence was introduced to show that the plaintiff should have been informed of the accident, no evidence was introduced to show that the omission was made with intent to defraud. No conclusive evidence was introduced to prove that the problems that the plaintiff had with the boat were related to the accident. Furthermore, notwithstanding evidence that the boat should not have been represented to be a demonstrator, the plaintiff admitted that he was informed of the fifty-five hours logged on the boat at the time of purchase. No effort was made by the defendants to conceal this.
Louisiana always has required that fraud be proven and cannot be presumed. See, e.g. La.Civ.C. art. 1848; Johansen v. Port Jewell, Inc., 351 So.2d 184 (La.1977). By reason of the prohibition against presumption of fraud, coupled with the strong policy considerations that corporate identity is to be disregarded only in exceptional circumstances, we find that the trial court was in error in finding Pazos personally liable. In the instant case, we cannot presume that Pazos intended to defraud the plaintiff. Pazos, therefore, is not personally liable for the damages in redhibition.
For the foregoing reasons, the judgment holding SeaCamper liable to the plaintiff for $28,550.00 is affirmed. The judgment against Hector Pazos and Ocean Oil is reversed.
AMENDED IN PART REVERSED IN PART.
NOTES
[1] Although the manufacturer was named as a defendant in the plaintiff's suit, it is not before us on appeal. Testimony at trial indicated that the manufacturer had filed bankruptcy.