MARVIN, Judge.
Crown Zellerbach, the purchaser of timber from the defendants Henderson, appeals a judgment rejecting its demands for rescission of the sale and return of the purchase price on the grounds that Crown discovered, after the sale, a lis pendens of record affecting the property. Crown contends the lis pendens is a claim that amounts to an eviction, contrary to defendants’ warranty to maintain Crown in peaceable possession. We disagree and affirm the judgment. CC Arts. 2500, 2501, 2506, 2560. Bonvillain v. Bodenheimer, 117 La. 793, 42 So. 273 (1906); Kuhn v. Breard, 151 La. 546, 92 So. 52 (1922).
FACTS
In 1963, Mrs. Fannie Henderson, a widow, conveyed to each of her four sons, James, Kendall, Lyndall, and Kenneth, separate but contiguous 20-acre tracts of land for the recited consideration of “$100 and other valuable consideration.” About five months before these conveyances, Mrs. Henderson conveyed to her daughter, Peggy, a town lot 100’x210’ in Winnfield for *191 the recited consideration of “$10 and other good and valuable considerations.”
On June 6, 1972, Peggy sued her four brothers to set aside the 1963 conveyances by her mother to them, alleging that each conveyance was made without consideration and was a simulation or donation in disguise. The brothers answered and reconvened to make the same attack on the 1962 conveyance by their mother to Peggy. Lis pendens of their respective claims were filed by Peggy and by her brothers.
On May 5, 1979, Crown purchased in one deed the timber on each 20-acre tract that had been conveyed in 1963 to James, to Kendall, and to Lyndall by their mother. The warranty deed allowed Crown until September 1, 1980, to harvest the timber from the described 60 acres. Crown did not examine title. About a month later, Crown received a letter from Peggy’s attorney that
The ownership of the ... property and the timber ... is the subject of litigation ... in ... Winn Parish ... My client [Peggy] is asserting an interest in this property and ... we will be looking for her pro rata share of payment for any timber taken off this property or any damage done to this property.
I would appreciate the opportunity to discuss this matter with someone in authority at Crown ... It is not our intention to cause Crown ... any difficulties; we simply do not want our client’s property damaged without her receiving recompense.
Without other formal written demands on the three Henderson brothers, Crown filed its action on July 2, 1980, about two months before the expiration of the harvest term of the 1979 timber deed and more than a year after receiving the letter from Peggy’s lawyer. Crown explained that it made a deliberate decision not to harvest the timber while its attorneys “evaluated” the matter. The Henderson brothers answered Crown’s action and brought a third-party action that asserted indemnity and damage demands against Peggy.
Before Crown’s action was tried, Peggy’s action that was filed in 1972 against her four brothers was dismissed for lack of prosecution for a five-year period. CCP Art. 561.
In rejecting Crown’s demands against its timber vendors, the trial court reasoned that neither the 1972 lis pendens nor the 1979 letter from Peggy’s lawyer to Crown caused an eviction or loss of any part of the timber. CC Art. 2500.
WARRANTY AGAINST EVICTION
Crown strenuously argues that, being confronted with Peggy’s claim and the lis pendens, it should not have been required to test the validity of the titles of its vendors or to assume the risk of being declared a trespasser on the timberlands in question. In this respect, Crown contends that its perhaps deliberate failure to harvest the timber before the harvest term expired on September 1, 1980, should be considered only in the light of the dilemma it was facing in 1979-80, because of the threat of Peggy’s claim, and notwithstanding that the claim was dismissed after the term expired September 1,1980, and before Crown’s action was tried.
The logic of Crown’s argument has been tested in the courts of this state on many occasions and has not prevailed against the law. See Kemp v. Kemp, 2 La. 240 (La.1831) and cases thereafter, discussed in Comment, “Warranty of Title” or Warranty of Peaceable Possession in Louisiana?, 15 Tul.L.Rev. 115 (1940). That comment correctly summarizes the case law interpreting the civil code articles, before and since its publication, in this manner: The vendee of a thing sold, regardless of whether he has paid the purchase price, is allowed to rescind the sale in only three specific instances: (1) where there is an actual [physical] eviction; (2) where the vendee, after the sale, acquires from another a better title than that of his vendor; or (3) where the vendee shows a perfect title outstanding in another. Compare the later cases, Brewer v. New Orleans Land Co., 154 La. 446, 97 So. 605 *192 (1923); Broussard v. Dickerson, 166 So.2d 92 (La.App.3d Cir.1964); Collins v. Slocum, 317 So.2d 672 (La.App.3d Cir.1975); Leon McQueen Lbr. Co., Inc. v. Baer, 391 So.2d 1198 (La.App. 1st Cir.1980); Watson v. Big T Timber Co., 382 So.2d 258 (La.App.3d Cir.1980); Morgan v. Fuller, 441 So.2d 290 (La.App.2d Cir.1983).
Crown relies on Halley v. Sellers, 347 So.2d 77 (La.App.2d Cir.1977), to support its argument that failure to deliver merchantable title is tantamount to an eviction after the sale. Compare cases concerning merchantability of title under a purchase agreement where specific performance is sought. See Talbot v. New Orleans Land Co., 143 La. 263, 78 So. 553 (1918); Solar Gen. Contractor, Ltd. v. Urban Redevelopments, Inc., 345 So.2d 558 (La.App. 4th Cir.1977); Lake Forest, Inc. v. Bon Marche Homes, Inc., 410 So.2d 362 (La.App. 4th Cir.1982).
As in the instant case, Halley concerned a completed sale, but the timber vendee was physically prevented on two occasions from harvesting the timber by one of the owners of record of the property. Peggy did not attempt to prevent Crown from harvesting the timber and she was not a record owner of an interest in the timber lands in question. She was not in the category, discernable under the case law, of a third person with a perfected, or record, interest in the property. Crown’s reliance on Halley is misplaced. Mrs. Henderson was the record owner when she conveyed the property to each of her three sons in 1963 and thereafter each son was the record owner of his respective 20-acre tract.
We agree with Crown that its failure to examine title had no effect on the warranty obligations of its vendors, even though the 1972 lis pendens filed by Peggy was recorded. See CC Art. 2453; Brewer, supra; Dane v. Doucet Bros. Const. Co. Inc., 396 So.2d 418 (La.App. 4th Cir.1981); L.E.C., Inc. v. Collins, 332 So.2d 565 (La.App. 1st Cir.1976); Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 39 Tul.L.Rev. 491 at 509-511 (1965). Lis pendens is registry notice to third persons but is not record or perfected title that achieves the status of an eviction under CC Art. 2500. See L.E.C., supra. CCP Arts. 3751-3753. If Peggy had prevailed in her action against her brothers, Crown had its action in warranty against her brothers who were its vendors. CC Arts. 2417-2419.
CC Art. 2560 prohibits a vendee in possession who has paid the purchase price from demanding a restitution from his vendor because the vendee has his remedy by the call in warranty. A vendee who is “disturbed” and who has not paid the purchase price is allowed to withhold payment of the price until his vendor gives security. CC Art. 2557.
Here, Crown has not shown an actual eviction or a perfect or outstanding record title in a third person and cannot prevail. Kuhn, supra; Bonvillain, supra. We find no error in the judgment appealed.
At appellant’s cost, we AFFIRM.