[No. 3740–II.   Division Two.   July 8, 1980.]

RICHARD G. TENNANT, ET AL, *Appellants,* v. DOROTHY
M. LAWTON, ET AL, *Respondents.*

*Richard G. Tennant,* pro se.

*Larry O. Klossner* and *Randall Stewart,* for respondents.

PETRIE, J.—Plaintiffs, Richard and Susan Tennant, husband and wife, appeal from a judgment which dismissed their complaint against defendant Boyer and Cox Realty, Inc., and which awarded them damages in the amount of $1,525.50 against defendant Dorothy M. Lawton, presently known as Dorothy M. Hultgren. The thrust of plaintiffs' appeal is (1) that Boyer and Cox Realty failed to exercise due care in its capacity as agent/broker in the sale of a parcel of land in April 1975 from Mrs. Hultgren, as seller, to plaintiffs, as purchasers; and (2) that the trial court improperly reduced the amount of plaintiffs' damages because, the trial court concluded, plaintiffs had already mitigated those damages.[1] We reverse the judgment insofar as it dismissed the realtor from liability; and we modify the judgment insofar as it reduced the amount of damages awarded.

Although the trial record leaves much to be desired from the standpoint of clarity of presentation of issues, we find it sufficient to resolve all the issues properly before us. The trial court awarded the Tennants a judgment based on *unchallenged* findings that they purchased a parcel of land from Mrs. Hultgren which, if it had been a "buildable site" would have a value of $15,100 but which, because it was not amenable to issuance of a septic tank permit, was worth

---

[1]Much of plaintiffs' brief is devoted to a challenge to the conduct and competency of their trial counsel. Those matters are not properly before us and must await resolution in an action before an appropriate tribunal in which he is named as a party called to answer specific complaints.

only $6,600. Further, the court determined either as unchallenged findings or conclusions that Mrs. Hultgren misrepresented—albeit unintentionally—that the property had previously passed a percolation test but the time for issuance of a permit had expired; that this was a material representation upon which the Tennants relied; that this misrepresentation had been communicated to the selling agent, Mrs. Ruth Cutter, an employee of Boyer and Cox; but that the "agent was truly justifiably ignorant of the element of falsity in the representation."

We consider first the amount of the damages. When a seller, even though she acts under an honest mistake without any intent to deceive, misrepresents either the quantity or quality of the land sold, a buyer who justifiably relies on this misrepresentation is entitled to the difference between the market value of the land had it been as represented and the market value of the property as it actually was at the time of the sale. *Alexander Myers & Co. v. Hopke,* 88 Wn.2d 449, 565 P.2d 80 (1977); *Dixon v. Mac-Gillivray,* 29 Wn.2d 30, 185 P.2d 109 (1947); *Hunt v. Allison,* 77 Wash. 58, 137 P. 322 (1913); *Weinstein v. Sprecher,* 2 Wn. App. 325, 467 P.2d 890 (1970). Thus, the trial court's initial assessment of the "benefit of the bargain" damages was correct.

We turn then to a consideration of the trial court's reduction of those damages. The court reduced the damages because the Tennants were able to purchase an easement across their neighbor's land and to construct a pumped septic system with 250 feet of backup drainfield in their neighbor's property at a cost of $1,525.50. Accordingly, the court awarded damages only in the amount of the cost to obtain and install the substitute septic system.

One who has suffered a wrong at the hands of another must make a reasonable effort to mitigate his damages. *Westland Constr. Co. v. Chris Berg, Inc.,* 35 Wn.2d 824, 215 P.2d 683 (1950). The person wronged cannot recover for any item of damage which could thus have been

avoided. C. McCormick, *Damages* § 33 (1935). Nevertheless, we hold the trial court misapplied this rule to the case at bench. The Tennants bargained for acreage on which they could build a home with a self–contained sewerage system. Instead, they have property without the capability of supporting a sewerage system. They have had to purchase an easement and construct a backup drainfield some 250 feet in length on the adjacent property, with the potential problems entailed in maintaining such a drainfield and the necessary pump and other equipment. The easement solution does not make plaintiffs whole.[2] They are entitled to the benefit of their bargain, as that measure of damages was proved at trial.

There remains the issue of consequential damages not inherent in the "benefit of the bargain," *Salter v. Heiser,* 39 Wn.2d 826, 239 P.2d 327 (1951). Where the benefit of the bargain will not make a plaintiff whole, he can recover in addition actual damages which follow as the natural and ordinary consequences of the wrong. *Alexander Myers & Co. v. Hopke, supra* at 458; *McInnis & Co. v. Western Tractor & Equip. Co.,* 67 Wn.2d 965, 410 P.2d 908 (1966). The Tennants claim in their brief all manner of damages for telephone calls, pro se legal research, automobile mileage, mental anguish, etc. These items were not in evidence at trial and will not be considered.

We hold also that the trial court correctly denied plaintiffs' recovery for increased construction costs for a new house. Plaintiffs offered evidence of increased costs in the form of an appraisal based upon their blueprints. The appraiser estimated their building costs at $35,000 in the summer of 1976; $39,400 in April 1977; and $46,700 in July

[2]We note that in March 1977, Mrs. Hultgren offered the Tennants either of two alternative plans: (1) She would obtain an easement on adjoining property at her own expense, or (2) she would allow a rescission of the contract and would partially refund payments, taxes, and miscellaneous minor expenses totaling $4,456. Again, neither alternative would have made the Tennants whole. They were not obliged to accept either alternative.

1978. The court excluded this evidence because the Tennants at that point in the trial had not established when they were ready to proceed with construction. Later in the trial, Mr. Tennant fixed the date at November 1976. He conceded, however, that he never applied for a loan and never listed or advertised their former house for sale in order to obtain funds with which to build. As the trial court recognized, in this difficult situation plaintiffs could not obtain a building permit because they could not obtain a septic tank permit, and they could not obtain a septic tank permit without an approved site on the property. Apparently, the Tennants incurred some higher construction costs as a result of having to seek various alternatives to enable them to provide a sewerage system for the property. Like the trial court, however, we cannot determine a date on which the Tennants could have obtained a building permit and would have had sufficient financing in hand to begin building a house, were it not for the absence of an approved septic tank site. We agree there was a failure of proof on this issue, and we cannot speculate as to the amount of increased costs as an element of damages. *See Gifford v. Washington Water Power Co.*, 85 Wash. 341, 148 P. 11 (1915); *Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1341–42 (9th Cir. 1976); C. McCormick, *Damages* § 25 (1935).

In addition, plaintiffs have requested attorney's fees on appeal. We decline to award them, as there is no statutory or contractual provision so requiring in this case. *Iverson v. Marine Bancorporation*, 86 Wn.2d 562, 546 P.2d 454 (1976). This does not, however, preclude the Tennants, as the prevailing party, from claiming costs allowed by RAP 14.3 and RCW 4.88.260.

Next, we consider the issue of the liability of Boyer and Cox for any misrepresentation initially communicated by Mrs. Hultgren to Mrs. Cutter and subsequently to the Tennants. This requires examination of the trial court's finding/conclusion that the realtor "was truly justifiably ignorant" of the false representation.

■ The trial court found that Boyer and Cox, the broker, was not liable because, although Mrs. Cutter repeated to the Tennants the false statements made to her by the seller, she had no reason to doubt them. The correct rule is that the broker is liable because of material representations of the principal if he repeats them and knows, or reasonably should know, of their falsity. 2 Restatement (Second) of Agency § 348, comment *b* (1958). *See Allen v. Overturf,* 234 Ark. 612, 353 S.W.2d 343 (1962). Liability attaches in this context on grounds of negligence. *See First Church of the Open Bible v. Cline J. Dunton Realty, Inc.,* 19 Wn. App. 275, 574 P.2d 1211 (1978); *Stevenson v. Barwineck,* 8 Wis. 2d 557, 99 N.W.2d 690 (1959).

A real estate broker owes a fiduciary duty of undivided loyalty to his principal, usually the seller, of course. *Mersky v. Multiple Listing Bureau of Olympia, Inc.,* 73 Wn.2d 225, 437 P.2d 897 (1968). The underlying rationale of his duty to a buyer who is not his client is that he is a professional who is in a unique position to verify critical information given him by the seller. His duty is to take reasonable steps to avoid disseminating to the buyer false information. *See Alexander Myers & Co. v. Hopke, supra; Stenson v. Thrush,* 36 Wn.2d 726, 219 P.2d 977 (1950); *First Church of the Open Bible v. Cline J. Dunton Realty, Inc., supra* at 279 n.2. The broker is required to employ a reasonable degree of effort and professional expertise to confirm or refute information from the seller which he knows, or should know, is pivotal to the transaction from the buyer's perspective.

The conduct of Boyer and Cox Realty fell short of that legal standard. The record amply supports the trial court's finding and conclusion that Mrs. Cutter acted under an honest mistake and had no intent to deceive or commit fraud against the Tennants. Rather, she simply failed to exercise due care to verify the critical contingency of an approved septic tank site on the property. The evidence shows that she asked Mrs. Hultgren for evidence of an approved percolation site evaluation for the property. Mrs.

Hultgren brought her two documents captioned "Application—Sewage Disposal Permit & Site Evaluation" dated April 2, 1973. One had been renewed on August 25, 1974. Mrs. Hultgren testified that she told Mrs. Cutter she thought they were expired and asked her to "check on them." Mrs. Cutter did not deny being so instructed, and, in fact, acknowledged telling the Tennants the time for consideration of the applications for the perc holes permit had expired. Mrs. Tennant said Mrs. Cutter promised to renew a septic tank permit. Once Mrs. Cutter received the two documents from Mrs. Hultgren, however, she became confident the property had approved septic tank sites and disregarded the instruction to check on them. The applications actually were for adjoining 2 1/2–acre parcels which Mrs. Hultgren had previously sold through another realtor. Mrs. Cutter knew there had been a division and previous sale of the adjoining parcels, and could readily observe that the site evaluation documents on their face were for 2 1/2 acres each, rather than 6 acres. The Tennants had insisted upon an approved septic tank site and made that an express condition of their offer, yet Mrs. Cutter did not follow through on her promise to renew the putative permits.

Thus, Mrs. Cutter knew the crucial nature of the septic tank condition—indeed, she stated she always included such a condition in earnest money agreements to protect the seller; she received from the seller false information about that condition; she should have been alerted to problems concerning the information by the mismatch of sizes on the site evaluation documents versus the property being sold and by the expiration of one of them; her principal advised that they were expired and instructed her to "check on them"; and yet she did nothing to verify the existence of a valid permit which was crucial to the transaction. That she acted without malice or fraudulent intent, we do not doubt. But she failed to take the simple steps within her area of expertise and responsibility which would have disclosed the absence of any health district approved site on

the subject property. This failure constituted negligence as a matter of law which resulted in damages to the Tennants. The dismissal of Boyer and Cox must be reversed.

In view of the foregoing analysis, we reverse the dismissal of Boyer and Cox Realty, Inc., and we modify the trial court's judgment by awarding the Tennants damages against Mrs. Hultgren and Boyer and Cox in the amount of $8,500.

REED, C.J., and PETRICH, J., concur.