Dortha WALTER and Carol Walter,
Appellants (Defendants),

v.

Larry MOORE and Robin Moore,
husband and wife, Appellees
(Plaintiffs).

No. 83–183.

Supreme Court of Wyoming.

May 23, 1985.

Robert C. Wilson, Douglas, for appellants.

Mark R. Stewart, Glenrock, for appellees.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

This appeal is from an action which sought rescission of a contract for deed entered into by Dortha Walter, appellant, and appellees Larry and Robin Moore. The action also sounded in tort against Dortha Walter and her son, Bruce, and daughter-in-law, Carol. Rescission of the contract and dismissal of Bruce Walter were granted by summary judgment and are not at issue in this appeal. The only issues at trial concerned the determination of Carol Walter's liability and the restoration of the parties to status quo prior to entering into the real estate transaction. Judgment was entered against Dortha Walter as vendor and Carol Walter as a licensed real estate agent in the amount of $23,139.84 with a setoff for reasonable rent in the amount of $4,117.50.

We will affirm in part and reverse in part.

Appellants raise the following issues:
1. "Whether the district court erred in finding that the appellant, Carol Walter, was liable as a result of being a licensed real estate agent at the time of the transaction and was involved in and held herself out as an experienced real estate agent for the purpose of this transaction."
2. "Whether or not the district court, after rescinding the contract, restored the parties to status quo when the court allowed only an offset of four thousand one hundred seventeen dollars and fifty three cents for the appellees residing on the property for a period in excess of two years from the date of the contract April 25, 1981, until the date of the trial, May 17, 1983."

FACTS

Dortha Walter was selling her house trailer and river-front property; she placed an advertisement in the classified section of the Casper Star Tribune newspaper listing this property for sale. She did not list the property with a real estate agency. Mr. Moore saw the ad, called Dortha, and arranged to view the property. Mr. Moore travelled to the property and met Dortha. She informed him of her sale price. He said he wanted his wife to see the property. Mr. and Mrs. Moore then returned and were shown the property. Dortha Walter testified, "I knew how much I had paid for the mobile home and I knew how much I had to have for the land." She advised the Moores of her price; they agreed to a sale price and purchased the property. Thus, the sale and purchase were agreed upon. It was only necessary to formalize and complete the transaction.

Dortha Walter stated that her daughter-in-law Carol was a real estate agent and would assist in details of the transaction with which she was unfamiliar. Mr. Moore then contacted Carol Walter by telephone and discussed financing, interest rates and qualifying for a loan. Carol mentioned that she was a licensed real estate agent and that she was not accepting a commission on this sale, but that, "she was just helping her mother[-in-law] out." Carol then prepared a standard offer and acceptance agreement which was sent to Dortha Walter who gave it to the Moores. There were some minor mistakes. Mrs. Moore called Carol Walter about the errors which were changed and initialed by Dortha Walter and the Moores. The Moores and Dortha Walter subsequently entered into a contract for deed which was prepared by an attorney. Before trial the Moores had had no contact with Carol Walter except the two telephone calls. During the first telephone call Carol discussed the flood-prone area of the property with appellee. She was aware that Converse County subdivision and development regulations were being considered. She did not know whether anything had been finalized. The property is located in Converse County, Wyoming; Carol resided in Sheridan County, Wyoming, about 200 miles to the north.

Approximately six months after appellees had moved onto the property the septic system quit working. Mr. Moore went to the county sanitation department to ascertain the county requirements for septic systems. A sanitation engineer mentioned

that the property was in the floodplain zone which precluded installation of a septic system. Mr. Moore discussed this problem with the county planner and found that residential buildings could not be located within the floodplain. Thus, they could not install a septic tank nor build a new home on the land purchased from Dortha Walter as they had planned.

The Moores first contacted only Dortha Walter and attempted to informally rescind the contract with her. When unsuccessful, although Bruce Walter had nothing to do with the transaction, appellees sued Dortha Walter and Carol and Bruce Walter seeking rescission and asking that Carol Walter be held responsible as a real estate agent for fraudulently misrepresenting or concealing information regarding the property. Appellees alleged in the complaint that:

"11. The defendant, Carol Walter, as a real estate agent and former owner of the property, and a participant in the sale of the property from the defendant, Dortha Walter to the plaintiffs, knew, or should have known of the existence of the Converse County Subdivision development regulations and the fact that the property was located in the flood prone area, and further should have advised the plaintiffs of the existence of the regulations, and the effect of the regulations on the plaintiffs' intended use for the subject property.

"12. Instead, the defendants purposefully and fraudulently concealed from the plaintiffs their knowledge of the facts that they had not complied with County subdivision regulations, and that the property was in the 100 year flood prone area of the North Platte River."

Appellees do not contend that Carol Walter actually knew of the applicable regulations; they contend that she should have known of their existence.

The standard of review for questions concerning the sufficiency of the evidence is that we assume that the evidence in favor of the successful party is true leaving out of consideration the evidence of the unsuccessful party in conflict therewith

and give to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it. *Krist v. Aetna Casualty and Surety*, Wyo., 667 P.2d 665 (1983); *City of Rock Springs v. Police Protection Ass'n*, Wyo., 610 P.2d 975 (1980).

Questions of fact are to be determined by the fact finder. We do not substitute our view of the facts for that of the fact finder, and findings will only be set aside upon appeal if they are "clearly erroneous or contrary to the great weight of evidence." *Plains Tire and Battery Co. v. Plains A to Z Tire Co., Inc.*, Wyo., 622 P.2d 917, 920 (1981). However, findings of fact which are not supported by the evidence, contrary to the evidence, or against the great weight of evidence may not stand. *Kvenild v. Taylor*, Wyo., 594 P.2d 972 (1979).

## FRAUD

The trial court in the judgment entered stated:

"That the defendant, Carol Walter, was a licensed real estate agent at the time of this transaction, and was involved in, and held herself out as an experienced real estate agent for the purposes of this transaction."

The trial court did not find Carol to be an agent of Dortha Walter or of the Moores. Carol was sued in tort for fraud. The basis of the judgment against her was that Carol fraudulently misrepresented to the Moores that the property being purchased from Dortha was in compliance with zoning laws and sufficient for their purposes. It is apparent that the trial court found Carol liable for fraud because she was a licensed real estate person and held herself out as an experienced real estate agent with respect to this transaction. It was error to hold her liable on this basis; she was not liable for fraud for she did not know that zoning regulations affected the property. Without this knowledge, there could be no *knowing, intentional* concealment or misrepresentation.

In *Meeker v. Lanham*, Wyo., 604 P.2d 556, 559 (1979), we stated:

"Appellant presented no evidence from which it can even be inferred that these statements made by appellee were anything but good faith characerizations based upon appellee's knowledge at the time of the sale. There is no implication of any concealment of known defects. One cannot be guilty of fraudulently or intentionally concealing or misrepresenting facts of which he is not aware." (Citations omitted.)

And so it was that Carol Walter's statements were good faith characterizations based upon the knowledge she had at the time of the sale. For instance, she told appellees about the floodplain and that one Akins, to whom she had sold neighboring property, had been able to build a house above the floodplain. She did not know that the county had subsequently adopted regulations that affected the property. She was not required to know this and cannot be held liable and "guilty of fraudulently or intentionally concealing or misrepresenting facts of which [she] is not aware." Meeker v. Lanham, supra.

■ Carol Walter did not have an affirmative duty to gratuitously undertake to search records, interview the county planner, or develop information concerning this property. The buyers, knowing that she was the daughter-in-law of the seller, and knowing the circumstances, could not reasonably rely upon her to undertake this task. The buyers, knowing of the family relationship between Dortha and Carol Walter and knowing Carol's limited gratuitous involvement, had a duty to perhaps employ their own lawyer or someone to represent them or at least to determine matters concerning the property for themselves.

Applying the standard applicable to a lay person, Carol Walter did not breach a duty to appellees nor did she fraudulently misrepresent relevant facts. If we were to affirm the judgment of the trial court in this circumstance, this case would be unique in the annals of the law in this state in that we would be finding Carol liable, not as a real estate agent, but of fraudulent misrepresentation in failing to disclose matters of which she had no knowledge. This we cannot do.

■ However, if we can affirm the judgment on any theory, it is our duty to do so. *37 Gambling Devices (Cheyenne Elks Club and Cheyenne Music and Vending, Inc.) v. State*, Wyo., 694 P.2d 711 (1985); *Valentine v. Ormsbee Exploration Corp.*, Wyo., 665 P.2d 452 (1983); *Agar v. Kysar*, Wyo., 628 P.2d 1350 (1981). Carol Walter could be liable in this transaction if she were held to be acting as a real estate agent for and on behalf of both parties to this transaction.

## GENERAL AGENCY

The parties treat as synonymous the terms "general agent" and "real estate agent." With respect to the agency question, Carol may have been (a) an agent for Dortha Walter, (b) a real estate agent hired by Dortha, or (c) not an agent at all. If she was either a general agent or not an agent at all, she is not liable to the Moores.

■ We delineated the criteria for an agency relationship in *True v. Hi-Plains Elevator Machinery, Inc.*, Wyo., 577 P.2d 991, 997–998 (1978):

"When the relationship of principal and agent is in issue, the party alleging agency has the burden of proving both the existence and nature thereof. The law engages in no presumption that an agency exists. An agency relationship is not dependent upon an express agreement of the parties, but may be implied from the words or conduct of the parties, depending upon the circumstances. 2A C.J.S. Agency § 52, states the following test at pp. 623–625:

" ' * * * The law creates the relationship of principal and agent if the parties, in the conduct of their affairs, actually place themselves in such position as requires the relationship to be inferred by the courts, and if, from the facts and circumstances of the particular case, it

appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency.

" 'On the other hand, where it does not appear that there was any express or implied intention to create the relation, it will not be held to exist, as where it appears that the agent was acting on his own behalf.' (Footnotes omitted.)

"An implied agency must be based on facts provable by reasonable deductions or conclusions drawn from other facts and circumstances, and may be provable by reference to prior habits or course of dealings between the parties wherein the agent has repeatedly been permitted to perform similar acts in the past." (Citations omitted.)

There is no evidence which establishes an express agency relationship between Dortha and Carol Walter. There was not a contractual relationship nor was there consent. Dortha and Carol did not intend to create an agency relationship. Nor was there evidence establishing an implied agency. There was not a course of dealings between the two whereby one could infer agency. Carol was not acting with authority from Dortha nor making decisions concerning the transaction. She was not being paid; she was not given authority to list the property nor to show it to prospective buyers, nor negotiate terms, accept or convey offers. She was without authority to act on behalf of Dortha in any aspect of this transaction. These circumstances would not lead a reasonable person to believe that Carol was acting as an agent for Dortha.

 But, nevertheless, even assuming arguendo that Carol was an agent representing Dortha, she would not be liable to the Moores. Under general rules of agency law, Carol would not be held liable for failing to relay information about which she had no knowledge. According to the principles of agency, she had a duty to faithfully and honestly represent her principal, but she had no duty to third parties such as the Moores. She was not required to seek out and develop information for their benefit. She, of course, owed a third party (the Moores) a duty of not misrepresenting information of which she was actually aware; but, there are no allegations in this case that Carol misrepresented anything. See, Burke, Law of Real Estate Brokers (1982), and Sell, Agency (1975). And so in this case Carol could not be liable as a general agent. Perhaps she could be held liable as a real estate agent if she were acting as such at the time of this transaction.

## REAL ESTATE AGENCY

 A real estate agent is held to a higher standard in dealing with third parties than are general agents. There is a reason for the distinction between the two types of agency. Real estate salespersons are held to a higher standard concerning duties to third parties, i.e., buyers, because of the peculiar and unique nature of their profession. In the ordinary course of business the buyer will contact a broker or salesperson at a real estate office. The broker or salesperson will obtain information concerning earnings, income, assets, and net worth to ascertain the buyer's ability to qualify for a loan. The real estate agent will determine the buyer's wishes with respect to type of dwelling and location. The real estate agent then may spend weeks or months with the buyer showing dwelling houses to him, discussing sale prices, appraisals, values, and suggesting offers that might be made. A close trusting relationship often develops between the two. Offers made are conveyed by the real estate agent. The buyer relies upon his real estate agent for information and advice. The buyer often is not sophisticated and does not understand that the salesperson is the agent of the seller. It is for this policy reason that the real estate agent or broker is held to owe a duty to both the seller who employs him and the buyer to whom real estate is sold. Thus, the real estate agent is vastly different from a general agent whose duty is to

represent and act faithfully on behalf of his principal.

"In practice, if the selling broker ever meets the seller, it is usually either when showing the property to a prospective purchaser or upon presentation of a purchase offer to the seller. However, the selling broker's relationship with the buyer is quite different. Often, the broker has been in the company of the purchaser for many hours and has conducted some fairly confidential interviews with the prospective purchaser. Given such extensive contact with the buyer, and such minimal contact with the seller, the buyer is justified in believing that the agent will do his best to obtain the property for the buyer at the lowest possible price and on the most advantageous terms. Of course, for the agent to attempt to do so is a violation of the agent's duty to the seller. However, it would be unrealistic to expect the buyer to feel that a broker who has worked with him extensively is attempting to obtain the highest possible price for the seller, which, in actuality, is the agent's duty." (Footnotes omitted.) 20 Arizona L.Rev. 767, 772 (1978).

■ We say Carol Walter did not act as a real estate agent in this transaction. She never met the buyers, the Moores. She did not obtain loan information, show houses to them, convey offers to purchase, negotiate the sale price or terms of a sale, or develop a close relationship with the Moores. She did not list the property or show it or sell it, nor was she paid a commission. When asked, "Did she [Carol] do anything to change the terms of the contract or the agreement that you and Dortha had worked out?", Mr. Moore answered, "Not that I know of." Moore then testified that Dortha

" * * * led me to believe that her daughter was going to *help her* with that, because she wasn't that familiar with the—with the breakdown of everything, you know, how everything worked on the deal. Her daughter *was assisting her* with it and that the lawyer was going to draw up the contract after the deal got started." (Emphasis added.)

Moore's testimony clearly demonstrates that he knew Carol was helping her mother-in-law, not the Moores. The judge's finding that she "was involved in, and held herself out as an experienced real estate agent for the purposes of this transaction" cannot be upheld as a basis for holding Carol liable.

Section 33–28–104, W.S.1977, lists the acts constituting a person to be a broker or salesperson:

"Any person who, for another, with the intention or upon the promise of receiving a fee, does, offers, attempts or agrees to do, directly or indirectly, any single act defined in section 2(b) of this act [§ 33–28–102(a)(ii)], whether as a part of a transaction or as the entire transaction shall constitute such person a broker or salesman within the meaning of this act [§§ 33–28–101 to 33–28–117]."

The activities are listed in § 33–28–102(a)(ii), W.S.1977:

"The term 'broker' shall mean any person who for another and for a fee, commission or other valuable consideration, or with the intent or expectation of receiving same, negotiates or attempts to negotiate the listing, sale, purchase, rental, auctioneering, exchange or lease of any real estate or the improvements thereon, or collects rents or attempts to collect rents, or who advertises or holds himself out as engaged in any of the foregoing activities. The term 'broker' also includes any person employed by or on behalf of the owner or owners of real estate to conduct the sale, leasing, or other disposition thereof at a salary or for a fee, commission or any other consideration. It also includes any person who engages in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby he undertakes primarily to promote the sale of real estate through its listing in a publication issued primarily for such purpose or for referral of

information concerning such real estate to brokers or both."

The buyers knew the property they were purchasing had not been listed with a real estate agent, that no commission was being paid to anyone, and that Carol Walter was acting gratuitously and to a limited extent. They had never met Carol Walter. She lived in a town located almost 200 miles from the property in question. In the typical real estate transaction, the prospective buyer contacts a real estate salesperson, is shown houses and property, and depends upon the salesperson in the negotiations and finalizing the transaction. It is reasonable to expect the salesperson to be competent and knowledgeable about the property, the law, rules and regulations affecting it, and negotiations concerning it. It is also reasonable for the purchaser to expect a high standard of care in the typical relationship between a salesperson and a buyer. The buyers could not have expected this from Carol Walter; they were informed of all facts within her knowledge, and they should not have expected more. Under these circumstances she is not to be held to the standard of a real estate agent for she was not acting as a real estate agent.

### THE DISSENT

The dissent states that:

"The standard purchase offer and acceptance agreement which Carol had prepared was signed by the appellees and appellant Dortha Walter on April 25, 1981. It was at this point that the parties agreed to the purchase and sale of the property—not, as the majority suggest, prior to Carol's involvement in the transaction or prior to the buyers' reliance on her advice."

We continue to assert that the "parties agreed to the purchase and sale" prior to Carol's involvement. That would seem apparent for Dortha had determined she would sell her own property without listing or employing a real estate agent. She placed an advertisement to sell in the local newspaper. She had no reason to contact Carol until she had a buyer. The transcript of testimony supports us in this assertion. Thus, Mr. Moore testified:

"Q. When you talked to Dortha, you approached Dortha first?

"A. Yes.

 * * * * * *

"Q. Did you discuss the assumption of the mobile home?

"A. Yes, we—I asked her who she carried it with and approximately the balance and I wasn't sure at the time that I wanted the mobile home.

"Q. Did you tell Dortha you were interested in the property?

"A. I told her I would have to get back with my wife because I couldn't commit myself without her looking at it first."

Mr. Moore, stating that his wife had come down from Sheridan to look at the property, further testified:

"[M]y father was with us at that time. He was visiting. He drove in the same day she did.

"Q. The three of you looked at the property?

"A. Yes.

 * * * * * *

"Q. And did your wife and you decide to take the mobile home with the property at that point?

"A. Yes, we did.

 * * * * * *

"Q. You were going to buy the property. You had agreed with Dortha to buy the property at a certain amount of money.

"A. Yes.

"Q. Did you talk about any kind of term or what you could afford to pay?

"A. No, she just told me what she wanted down and they were going to carry the note at ten years at, I believe, 12 percent and that we would just assume the mobile home."

Mrs. Moore testified:

"Q. But you also said that that document [purchase offer and acceptance

agreement] wasn't what you agreed to with Dortha Walter.

"A. That is what I said.

"Q. *When did you reach that agreement* with Dortha?

"A. This agreement that—

"Q. The verbal agreement that this represents.

"A. *Before we signed this paper* [referring to the purchase offer and acceptance agreement].

"Q. Okay, was Carol Walter present at that meeting?

"A. No." (Emphasis added.)

A fair and reasonable reading of the record clearly demonstrates that the buyers and seller had agreed upon the sale among themselves prior to Carol's being involved.

The dissent, nevertheless, continues:

"I must say that it is impossible for me to see how the majority can hold, as a matter of law, that the record contained insufficient facts to support the trial judge's finding that Carol Walter 'was involved in and held herself out as an experienced real estate agent for the purposes of this transaction.'

\* \* \* \* \* \*

"The majority do not even look at this evidence of Carol's extensive participation in the transaction as a real estate agent. \* \* \* In holding the evidence insufficient for affirmance, the majority, remarkably, focus on what the parties did not do rather than what they did."

We focus upon what Carol did not do because there was so much she did not do. It is not so remarkable that she did so little, for she was not employed or paid nor did she even know the buyers. She spoke to them just twice by long distance telephone. In focusing upon what Carol did, we quote her testimony as follows:

"Q. Did you have any participation in any of the terms of the contract or of their agreement?

"A. Well, other than figuring out what the monthly payment would be and in order for it to be ten percent—she didn't

want to carry it anymore than ten years."

The Moores noted mistakes in the purchase offer and acceptance agreement, and Mrs. Moore testified:

"Q. And it wasn't the agreement that you and Dortha and your husband entered into.

"A. There were a few mistakes, yes.

"Q. Okay, so you recontacted Carol Walter and she told you how to make that document fit your agreement with Dortha."

Without belaboring this matter further, we state that if, as the dissent suggests, Carol accomplished the sale of this property from a distance of 200 miles, without ever seeing the buyers, through two long distance telephone calls, she is truly a remarkable salesperson. She will surely be in great demand as a lecturer and teacher at real estate sales seminars where she can impart to other real estate salespersons her technique for accomplishing this astonishing achievement.

While it is clear that we may and should hold real estate agent to a high standard of care, the preliminary question must always be whether or not the person was acting as a real estate agent. We cannot find Carol Walter acting as a real estate agent in this transaction and, therefore, liable to the buyers on the basis of her minimal involvement as daughter-in-law of Dortha Walter.

### RESTORATION

Appellants do not appeal the rescinding of the contract. However, they question the judgment of the court in the amount allowed as a setoff for rent. "It is the Appellants' contention that the status quo would have included a setoff as to the total damages for the Appellees' exclusive use of the property and not just the trailer during the term of their occupancy." The judgment stated:

"A. Plaintiffs be, and they hereby are, granted a judgment against the defendants Dortha Walter and Carol Walter, jointly and severally, as follows:

| "Refund of Payment of Land | $15,923.90 |
| "Repair of Well | $ 1,189.08 |
| "Pump Shed | $ 740.36 |
| "Attorney Fees | $ 1,169.00 |
| "Trailer Payments | $ 4,117.50 |
| "Total: | $23,139.84 |

"B. Defendants are entitled to a setoff for reasonable rent for the trailer sold to plaintiffs under the terms of the parties' contract in the amount of $4,117.50."

An essential part of the rescission of a contract is the restoration of the parties to status quo. 17 Am.Jur.2d Contracts § 512. The rule of restoration is one of justice and equity not procedure and, therefore, must be reasonably applied and construed. Id.

> "It is the general rule that a party seeking to rescind a contract must return the opposite party to the position in which he was prior to entering into the contract. However, this is not a technical rule, but rather it is equitable and requires practicality in readjusting the rights of the parties. The standard used is 'substantial restoration of the status quo.' How this is to be accomplished, or indeed whether it can, is a matter which is within the discretion of the trial court, under the facts as found to exist by the trier of the fact." (Citations omitted.) *Smith v. Huber*, Colo.App., 666 P.2d 1122, 1124–1125 (1983).

The appellants were awarded a sum for the reasonable rental value of the trailer. They were not allowed a setoff for the use of the property. The appellees, however, were not awarded a restoration amount for property taxes, appreciation in the value of the property nor interest. The trial court acted equitably in attempting to return the parties to status quo and therefore the amounts awarded were adequate. We, therefore, affirm the court's decision in this respect, affirming also the judgment against Dortha Walter, but reversing the judgment against Carol Walter.

Reversed in part and affirmed in part.

ROSE, Justice, with whom THOMAS, Chief Justice, joins, dissenting in part and concurring in part.

"Realtors, just like doctors, lawyers, engineering consultants, and builders, hold themselves out as professionals; it is their job to know their profession. People rely on and trust them. Failure to comply with either the accepted standards in the field or the standards society is willing to recognize as acceptable, is actionable." [1]

The majority do not dispute this court's prior teachings that real estate agents, participating as such in the transfer of real property, are held to high standards of competency, integrity and trustworthiness. However, the majority avoid application of these standards in this case by holding that "Carol Walter did not act as a real estate agent in this transaction." I take issue with this factual conclusion which is diametrically opposed to that reached by the trial court.

The district court, following trial, held appellant Carol Walter liable based on its findings

> "[t]hat the defendant, Carol Walter, was a licensed real estate agent at the time of this transaction, and was involved in, and held herself out as an experienced real estate agent for the purposes of this transaction."

It seems to me that the best way to expose the erroneous conclusion which I perceive the majority to have reached is to analyze in full the facts pertaining to Carol Walter's participation in the transaction and the reasonableness of the buyers' reliance on her assertions.

As the majority observe, this litigation originated with a complaint filed by Larry and Robin Moore, appellees, purchasers of real property and a house trailer, against Dortha Walter, seller-appellant, for rescission, and against Dortha's son, Bruce,

---

1. Chief Justice Raper, now retired, writing for a unanimous court in *Hagar v. Mobley,* Wyo., 638 P.2d 127, 138 (1981).

and his wife, appellant "real estate agent"[2] Carol Walter, in tort.[3] Carol appeals from a holding which says that she breached her duties as a real estate agent who was involved in the buy-sell transaction between Dortha and the buyers. Dortha separately complains that the court erred in its effort to restore the parties to status quo.

The court, in summary-judgment proceedings, dismissed Bruce from the suit and went on to hold that the contract for the sale of property wherein Dortha Walter was seller and the Moores were buyers should be rescinded. Dortha Walter was held in the litigation, as was Carol Walter, her daughter-in-law.

Trial was to the court on two specific issues, namely: the determination of the role and liability of Carol Walter as a licensed real estate salesperson in the transaction, and the restoration of the parties to their positions prior to entering into the real estate transaction.

The judge found that the appellees were entitled to a judgment against the appellants for $23,139.84, with a set-off for rent for the trailer in the amount of $4,117.50. Therefore appellees were awarded a net judgment for $19,022.34.

I would have affirmed the trial court.

The appellants define the issues as follows:

### Issue No. 1

"WHETHER THE DISTRICT COURT ERRED IN FINDING THAT THE AP-

PELLANT, CAROL WALTER, WAS LIABLE AS A RESULT OF BEING A LICENSED REAL ESTATE AGENT AT THE TIME OF THE TRANSACTION AND WAS INVOLVED IN AND HELD HERSELF OUT AS AN EXPERIENCED REAL ESTATE AGENT FOR THE PURPOSE OF THIS TRANSACTION."

### Issue No. 2

"WHETHER OR NOT THE DISTRICT COURT, AFTER RESCINDING THE CONTRACT, RESTORED THE PARTIES TO STATUS QUO WHEN THE COURT ALLOWED ONLY AN OFFSET OF FOUR THOUSAND ONE HUNDRED SEVENTEEN DOLLARS AND FIFTY THREE CENTS FOR THE APPELLEES RESIDING ON THE PROPERTY FOR A PERIOD IN EXCESS OF TWO YEARS FROM THE DATE OF THE CONTRACT APRIL 25, 1981, UNTIL THE DATE OF THE TRIAL, MAY 17, 1983."

### ISSUE NO. 1

### DISCUSSION OF CAROL WALTER'S LIABILITY

#### The Buyers' Theory

The appellees Moores contended that Carol Walter was involved in the real estate transaction and did purposely and

---

**2.** At various times in this opinion and throughout the pleadings, evidence and judgment, Carol Walter is referred to as a licensed "real estate agent." The Real Estate License Act of 1971, §§ 33–28–101 through 33–28–117, W.S.1977 (now §§ 33–28–101 through 33–28–206, W.S. 1977, 1983 Cum.Supp.), identifies one who holds Carol Walter's qualifications and license as a "salesman." See Definitions, § 33–28–102, and Acts constituting person a broker or salesman, § 33–28–104, quoted in part in the majority opinion. I mention this to point out that the term "real estate agent" refers generally to real estate brokers and salespersons, and should not, in and of itself, be understood to imply the existence of a principal-agent relationship.

**3.** With respect to the liability of Carol Walter, the appellees-plaintiffs alleged as follows:

"11. The defendant, Carol Walter, as a real estate agent and former owner of the property, and a participant in the sale of the property from the defendant, Dortha Walter to the plaintiffs, knew, or should have known of the existence of the Converse County Subdivision development regulations and the fact that the property was located in the flood prone area, and further should have advised the plaintiffs of the existence of the regulations, and the effect of the regulations on the plaintiffs' intended use for the subject property.

"12. Instead, the defendants purposefully and fraudulently concealed from the plaintiffs their knowledge of the facts that they had not complied with County subdivision regulations, and that the property was in the 100 year flood prone area of the North Platte River."

fraudulently misrepresent and fail to disclose facts which she knew and/or should have known would and which ultimately did deny the buyers the use of the property for which they had bargained. The appellees say that the nondisclosure consisted of a failure to reveal that the property was on a floodplain on the North Platte River and thus within an area which was, by published county subdivision regulations, unusable for the purposes to which Dortha, the seller, and Carol, the real estate agent, knew—when the sale was consummated—the Moores intended to put their property. The appellees urge that the misrepresentation consisted of various affirmative assertions made by Dortha and Carol, together with Carol's drafting of a contract for the signature of the parties, which contract contained false information upon which the appellees relied to their detriment.

The appellees' legal theory is that, whenever a licensed real estate agent projects himself or herself into a real estate transaction, and the buyer has knowledge of and relies upon the agent's professional knowledge and skill, the real estate agent becomes obligated to perform his or her undertakings according to accepted professional standards. The appellees say that this includes the disclosure of material facts to a buyer with whom the agent is not in privity, if such facts are either known or with respect to which the licensed real estate salesperson is chargeable with knowledge, and a failure in these respects where injury and/or damages follow can, and in this case did, result in liability.

### The Real Estate Agent's Theory

Appellant Carol Walter defended against the charges leveled against her by first urging that, with respect to this transaction, she did not hold herself out as a professional real estate agent either with Dortha Walter as her principal or otherwise, and, secondly, even if she is found to have been involved in the transaction as an experienced real estate agent, she did not misrepresent or fail to disclose material

facts or behave in any way which would constitute negligence or fraud and thus, she says, she violated no duty which she owed to the Moores.

### Facts Pertaining to Carol's Alleged Liability as a Licensed Real Estate Agent

In view of the facts which are hereafter reviewed, I must say that it is impossible for me to see how the majority can hold, as a matter of law, that the record contained insufficient facts to support the trial judge's finding that Carol Walter "was involved in, and held herself out as an experienced real estate agent for the purposes of this transaction."

At their first meeting, Dortha told Mr. Moore that Carol was a real estate agent and that she would be assisting in the transaction, without commission, as a favor to her mother-in-law. Mr. Moore testified that Dortha

" * * * led me to believe that her daughter was going to help her with that, because she wasn't that familiar with the—with the breakdown of everything, you know, how everything worked on the deal. Her daughter was assisting her with it and that the lawyer was going to draw up the contract after the deal got started."

Dortha gave Carol's telephone number to Mr. Moore so that he could discuss with Carol the details of the transaction.

Following this initial meeting, Dortha advised Carol that Mr. Moore was interested in the property and that he would contact her for more information. Mr. Moore discussed the matter with his wife and then telephoned Carol for answers to his questions concerning the earnest money contract, payment schedules and interest rates. Carol testified that she probably told Mr. Moore that she was a licensed real estate agent and that she would be helping her mother-in-law in this transaction—although without remuneration.

Carol and Mr. Moore talked about the particulars of the transaction concerning which Dortha had no knowledge—for example, whether there would be a balloon

payment and the monthly payment obligation. Carol advised Mr. Moore about the need to build "above the floodplain," when he explained to her that he wanted to build a house on the subject property later on.

Carol did in fact prepare the standard purchase offer and acceptance contract for the parties' signatures. When the Moores discovered provisions in the contract prepared by Carol which were inconsistent with the Moores' understanding of the agreement, Dortha directed them to contact Carol to get it straightened out—which they did. Carol gave the Moores advice about how to correct the irregularities and the Moores relied upon Carol because she was a real estate agent. Mr. Moore testified:

"Well, we hashed around that we were concerned a bit; that it might be a mistake that was to try to get us to pay more money, intentionally, and then we discussed that, maybe, it was an honest mistake and we felt like since Carol had drawn it up, that, you know, it was an honest mistake. She would make it right."

Mrs. Moore testified:

"We discussed the fact that the mistakes were there and we wondered if they were legitimate mistakes or honest mistakes or whether they were trying to have us pay for things that were already agreed that the seller would pay for. We talked about the fact that she was a real estate agent and that, certainly, she did not make those mistakes on purpose; that it was an honest mistake, a typing error."

The standard purchase offer and acceptance agreement which Carol had prepared was signed by the appellees and appellant Dortha Walter on April 25, 1981. It was at this point that the parties agreed to the purchase and sale of the property—not, as the majority suggest, prior to Carol's involvement in the transaction or prior to the buyers' reliance on her advice. This agreement indicated that the property was in substantial compliance with the county subdivision laws, requirements and regulations in force in the locality:

"The Seller covenants that upon execution of this Contract:

"(a) The above-described property is in substantial compliance with applicable city, county and state subdivision laws, requirements and regulations in force and effect as of that date, EXCEPT: na."

About six months after the Moores purchased the mobile home and the land, the septic tank was found to be faulty and the county sanitation department informed Mr. Moore that he would not be permitted to have a septic tank on his land because it was within the boundaries of a flood zone and septic tanks were not allowed in a flood zone according to published county regulations. Mr. Moore then contacted the county planner and was advised that the Converse County subdivision and development regulations did not permit the location of a residence in the 100-year flood-prone area of the North Platte River. This information was contrary to that which the seller represented in the contract which Carol had prepared and offered to the parties for their signatures.

Carol and her husband had owned the property before selling it to Dortha, having obtained it in 1971, and Carol had known that the property was within the floodplain area of the Platte River since 1978 because, when she and her husband owned the property, they transferred some of it to another and she found out about the floodplain then. The transferee, Akins, was able to build a house *"above the floodplain,"* (emphasis added) and Carol had assisted Akins in obtaining financing and flood insurance in her capacity as a real estate agent. She told Larry Moore about Akins *"building up above the floodplain"* (emphasis added) when Moore indicated that he planned to build a house on the property.

Carol testified that she did not tell Moore about the subdivision regulations because "I didn't believe there [were] any" but she did not contact the Converse County officials to find out if there were subdivision

regulations which would affect the property. Even though Carol Walter testified that she did not believe there were any county subdivision regulations which would impact upon the Moores' use of the property, Carol admitted that she knew the county had a subdivision plan "in the working" but she did not know "anything had been finalized at that time." She said that she would have informed the Moores if she had known the property was not in compliance with county regulations governing subdivisions or septic tanks and she would "definitely" feel that it would be part of her obligation as a real estate salesperson to make this known to the buyer before the sale took place. It was her judgment that this disclosure would be her obligation whether she was to receive a commission or not.

The county planner testified that the Converse County subdivision regulations were adopted March 4, 1976 and that these regulations precluded the building of residential structures on the property involved in this litigation.[4]

### Sufficient Evidence to Support the Trial Court's Findings

Where sufficiency of the evidence is at issue, this court assumes the evidence of the successful party is true, leaves out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and gives to the evidence of the successful party every favorable inference which may reasonably be drawn from it. *Krist v. Aetna Casualty & Surety*, Wyo., 667 P.2d 665 (1983). The findings of the trial court must be sustained unless clearly erroneous or contrary to the great weight of the evidence. *True v. Hi-Plains Elevator Machinery, Inc.*, Wyo., 577 P.2d 991 (1978). It is only when findings and judgments are unsupported by the evidence, are contrary to the evidence or are clearly against the great weight of evidence that we will hold that the trial court's judgment cannot

stand. *Kvenild v. Taylor*, Wyo., 594 P.2d 972 (1979); *Barber v. State Highway Commission*, 80 Wyo. 340, 342 P.2d 723 (1959).

While the majority opinion acknowledges these well-established appellate concepts, it then proceeds to brush them aside and ignore the evidence relevant to Carol's role in the conveyance of the real property to the Moores. The consequence is that the majority opinion arrives at a position where it substitutes its view for that of the fact finder. Given the facts which I have heretofore reviewed in detail, it is my judgment that this court should have sustained the trial court's holding that Carol Walter inserted herself into the transaction as a licensed real estate agent and held herself out as a real estate agent for purposes of this transaction.

### Participation as a Real Estate Agent

It is undisputed that Carol holds a license as a real estate salesperson and that she and Dortha made that fact known to the Moores. The buyers contacted Carol for answers to their questions because they were advised of her expertise and knowledge concerning the sale of real property. Had they not been so advised, the Moores might well have done as the majority suggest and employed their own lawyer or representative to supply the information pertinent to their decision to purchase the property.

Carol Walter, however, answered the Moores' questions concerning the terms of payment, gave advice on financing and insuring a residential dwelling, prepared the offer and acceptance, and advised the parties when errors were discovered. Carol advised of the need to build above the floodplain when she learned of the Moores' plans to construct a home on the property. In short, Carol Walter performed the functions of a real estate agent following the initial contact between the buyers and the seller.

---

**4.** Converse County subdivision regulations were adopted in compliance with § 18–5–305, W.S. 1977, which required boards of county commis-

sioners to adopt such regulations within six months after March 10, 1975.

The majority do not even look at this evidence of Carol's extensive participation in the transaction as a real estate agent. Instead the majority set out the characteristics of a typical broker-seller-buyer relationship, note that the instant transaction varies from this model, and refuse to uphold the trial court's express factual finding that Carol Walter acted as a real estate agent in this conveyance. In holding the evidence insufficient for affirmance, the majority, remarkably, focus on what the parties did not do rather than what they did. Since none of the factors cited by the majority—a close, trusting relationship between the realtor and the buyer, an unsophisticated buyer, the showing and listing of property, the performance of a credit analysis, the receipt of a commission—is determinative of one's status as a real estate agent in a particular transaction, this court had a duty to examine the relationship which actually developed among the parties in this case. The evidence establishes that Carol acted like a real estate agent and that the Moores were justified in their belief that they were dealing with a real estate agent.

### Reasonable Reliance by the Buyers

The Moores testified that they relied upon Carol's advice because she was a real estate agent. The majority hold that such reliance was not reasonable because of the atypical nature of this transaction and because the Moores knew that Carol was receiving no commission.

As discussed above, the unusual nature of this transaction does not alter the fact that Carol conducted herself as a knowledgeable, licensed real estate agent for the purpose of consummating the transfer of property to the Moores. Therefore, when she prepared and presented the purchase agreement, the Moores reasonably could have expected it to contain accurate, reliable information concerning the property. In similar fashion, the buyers, knowing that Carol was brought into the transaction because of her expertise, had a right to believe her assertion that the property was suitable for residential purposes.

The buyers' knowledge of the fee arrangement between Dortha and Carol has no relevance to the question of the reasonableness of the buyers' reliance on Carol's representations. Sections 33–28–102(a)(ii) and 33–28–104, W.S.1977, quoted in the majority opinion, define those persons subject to the licensing requirements of the Act, and in no way suggest that the amount of a licensed real estate agent's commission governs the degree of reliance which a buyer may reasonably place on that real estate agent. The buyer should not be expected to gauge his reliance according to the deal worked out between the seller and the real estate agent. Rather, the known qualifications of the real estate agent and her apparent role in the transaction more properly determine the reasonableness of the buyer's conduct.

### Duty Owed by Real Estate Agent

Having found, with the trial court, that Carol Walter participated in the transaction as a licensed real estate agent, I would then observe that both the legislature and this court have spoken concerning the real estate salesperson's obligations to those other than the seller and the standards of the real estate profession to which the real estate agent must adhere.

That the Wyoming Real Estate License Act of 1971, §§ 33–28–101 through 33–28–117, W.S.1977, was designed for the protection of the public and not just a salesperson's or broker's principal may be gleaned from the language of the Act itself. Section 33–28–106(a) provided:

"Licenses shall be granted only to persons who bear a good reputation for honesty, truthfulness, and fair dealing and are competent to transact the business of a * * * salesman in such a manner as to safeguard the interests of the public * * *."

In *Hagar v. Mobley*, Wyo., 638 P.2d 127 (1981), we reviewed at length the purpose and requirements of the licensing act and said:

"Real estate brokers and salesmen are licensed by the State of Wyoming and required to meet high standards of honesty, integrity, trustworthiness and competency. Theirs is a regulated profession. Failure to satisfy those standards is ground for suspension or revocation of a real estate broker's or salesperson's license. *An act licensing real estate agents must be construed in the light of an obvious purpose of protecting the public in the handling of important and valuable transactions relating to real property. Toavs v. State*, Wyo., 635 P.2d 1172 (1981). As a result, such an agent does not stand in the same shoes of a lay vendor. *Such realtors owe the vendee the same duties of integrity owed the public at large. They must be honest, trustworthy and competent.*" (Emphasis added.) 638 P.2d at 136.

We went on to adopt the legislative policy embodied in the licensing act as the standard of conduct applicable to licensed real estate brokers and salespersons:

"* * * It is clear that we may exact a high standard of care from realtors. In *Distad v. Cubin*, Wyo., 633 P.2d 167 (1981), this court held that a standard of care may be adopted by the court from a legislative enactment. *We adopt the legislative policy of § 33–28–111, W.S.1977 as the standards by which licensed brokers and salesmen may be held liable to purchasers.*" (Emphasis added.) 638 P.2d at 137.

Section 33–28–111, W.S.1977, provided in pertinent part:

"(a) The commission may upon its own motion, and shall, upon verified complaint in writing of any person setting forth a cause of action under this section, ascertain the facts and if warranted hold a hearing for the suspension or revocation of a license. The commission shall have power to refuse a license for cause or to suspend or revoke a license where it has been obtained by false representation or where the licensee in performing

or attempting to perform any of the acts mentioned herein is found guilty of:

"(i) *Making any substantial misrepresentation;* or

"(ii) Making any false promises of a character likely to influence, persuade, or induce; or

"(iii) Pursuing a continued and flagrant course of misrepresentation, or making false promises through agents or salesmen or any medium of advertising, or otherwise * * *." (Emphasis added.)

Thus, real estate salesperson Carol Walter had an obligation to disclose to the buyers all material information concerning the transaction of which she had or was chargeable with knowledge. It is then necessary to decide what duty she had to inquire of the county officials to determine whether the property was subdivided for the use to which she knew the buyers were intending to put it.

A number of courts have considered similar questions. The Court of Appeals of New Mexico held in *Amato v. Rathbun Realty, Inc.*, 98 N.M. 231, 647 P.2d 433, 434–435 (1982), that real estate brokers, as licensed professionals, have a duty to inform themselves of the relevant building codes and zoning requirements:

"Another factor leading us to the conclusion that a broker has the duty to exercise reasonable care or competence in obtaining or communicating information is that they are a licensed, regulated group. See, Real Estate Brokers and Salesmen Act, § 62–29–1, et seq., N.M.S. A.1978. The purposes of these statutes are to regulate and, thus, protect the public against abuses which can occur within the real estate business. * * *

* * * * * *

"* * * [W]e hold that it is incumbent upon the broker to have a general knowledge of the building code and the zoning ordinances which deal with the particular property being offered for sale or which is being purchased. We do not hold that this knowledge in any way relates to hidden or latent defects."

In *Tennant v. Lawton,* 26 Wash.App. 701, 615 P.2d 1305 (1980), the Court of Appeals of Washington held that a real estate agent acted negligently in failing to verify the existence of a valid septic tank permit which was crucial to the transaction. The realtor, relying upon documents produced by the seller, informed the purchasers that the property included approved septic tank sites. When the buyers subsequently discovered that no permit could be issued for the property, they brought suit against the real estate agent for damages. The court recognized that the real estate agent's representations were based on an honest misconception of the property's compliance with regulations, but found her liable anyway:

" * * * That she acted without malice or fraudulent intent, we do not doubt. But she failed to take the simple steps within her area of expertise and responsibility which would have disclosed the absence of any health district approved site on the subject property. This failure constituted negligence as a matter of law which resulted in damages to the [buyers]." 615 P.2d at 1310.

See also *Dugan v. Jones,* Utah, 615 P.2d 1239, 1248–1250 (1980); *Gauerke v. Rozga,* 112 Wis.2d 271, 332 N.W.2d 804, 808–809 (1983); *Norgren v. Harwell,* La.App., 172 So.2d 723 (1965). We note further in this regard that appellant Carol Walter herself testified that a real estate agent's obligation to the buyer would include disclosing the fact that the property failed to comply with relevant county regulations.

Based upon the foregoing authority, I would have held that Carol Walter, as a licensed real estate agent actively involved as such in this transaction, owed a duty to the buyers to inform herself of relevant subdivision regulations and to disclose to the buyers aspects of the regulations which materially affected the subject property. Instead, Carol prepared a contract for the parties to execute, which agreement represented that the property was in substantial compliance with applicable subdivision regulations. Carol Walter also told Larry Moore that she had assisted Mr. Akins in obtaining financing and insurance for a building "above the floodplain," but she assured the Moores that this had ultimately been accomplished. This representation could only have left the Moores with the understanding that he could build a residential dwelling on the property.

Carol knew of the Moores' plans for the use of their property, and she represented by the contract she prepared and her conversations with the Moores that nothing about these plans conflicted with the lawful use of the land. But this was not so, and these misrepresentations constituted a violation of the duties imposed upon a real estate agent involved in the conveyance of real property. Section 33–28–111. She is, in my judgment, liable in tort for damages sustained by the Moores.

"The liability of real estate agents, brokers and salespersons, as in all actions predicated upon the failure to perform some duty, sounds in tort. In tort cases damages are generally awarded in order to compensate claimants for loss. The measure of damages is the amount which will compensate for all the detriment proximately caused by the breach of duty. *Douglas Reservoirs Water Users Assoc. v. Cross,* Wyo., 569 P.2d 1280 (1977)." *Hagar v. Mobley,* supra, 638 P.2d at 139.

## ISSUE NO. 2

### RESTORATION OF THE CONTRACTING PARTIES TO STATUS QUO

I concur with the majority's holding on this issue, except that I would have the judgment apply to Carol as well as Dortha.

I would have affirmed the trial court.